The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Shane Edward JOHNSON,** Defendant–Appellant.

**No. 99CA0436.**

Colorado Court of Appeals, Div. II.

Nov. 9, 2000.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Ken Salazar, Attorney General, Melissa D. Allen, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Shane Edward Johnson, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree aggravated motor vehicle theft, second degree motor vehicle theft, vehicular eluding, attempting to elude a peace officer, criminal impersonation, false reporting to au-

thorities, and misdemeanor theft by receiving. We affirm, but remand for correction of the mittimus.

Defendant and another man (codefendant) were spotted in a car that had been reported stolen. A police officer approached the car and ordered the men to raise their hands. They fled, first by car and then on foot. When the officers apprehended defendant, he identified himself as "Jay Cantley" and was booked under that name. Defendant testified at trial that he fled from the police and gave a false name because he was on parole in California and would go to jail if authorities found him in Colorado with a handgun in his possession.

## I.

Defendant challenges his conviction for criminal impersonation on various grounds. We find no basis for setting aside the conviction.

## A.

■ Defendant first argues that the evidence was insufficient to prove the elements of criminal impersonation under § 18–5–113(1)(e), C.R.S.2000, because there was no showing that he engaged in an additional affirmative act after he assumed a false identity. We are not persuaded.

Section 18–5–113(1), C.R.S.2000, states:

A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity he:

(a) Marries, or pretends to marry . . . or

(b) Becomes bail or surety for a party . . . or

(c) Confesses a judgment, or subscribes, verifies, publishes, acknowledges, or proves a written instrument . . . or

(d) Does an act which if done by the person falsely impersonated, might subject such person to . . . liability . . . or

(e) Does any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another.

Section 18–5–113(1) thus defines criminal impersonation as knowingly "assuming a false or fictitious identity or capacity, and in that identity or capacity, doing any act with intent to unlawfully gain a benefit or injure or defraud another." *People v. Brown*, 193 Colo. 120, 123, 562 P.2d 754, 756 (1977); *see also People v. Borrego*, 738 P.2d 59 (Colo. App.1987).

Here, defendant does not dispute that he knowingly assumed a false identity and that he did so with the intent to keep law enforcement authorities from learning his true identity and parole status. However, he argues that "assuming a false identity" necessarily requires action to communicate that identity to the outside world and that, in addition to such communication, there must be evidence of a separate, additional act. We do not read either the statute or the case law to so require.

As discussed below, criminal impersonation differs from the misdemeanor offense of false reporting to authorities, § 18–8–111(1), C.R.S.2000, in that it requires the additional showing of intent to gain a benefit or injure or defraud. The focus of the cases addressing criminal impersonation has generally been on whether this additional element has been established, not on whether two separate overt acts have been shown. *See, e.g., People v. Brown, supra* (intent to defraud could be inferred where defendant's use of false name to facilitate passing gift certificates demonstrated he knew he was not entitled to exchange the certificates for merchandise); *People v. Shaw*, 44 Colo.App. 533, 616 P.2d 185 (1980) (evidence that defendant gave arresting officer a false name was insufficient to sustain conviction for criminal impersonation where prosecution failed to present evidence that use of the name would result in a benefit to defendant).

Although *People v. Brown, supra*, on which defendant relies, states that criminal impersonation requires a showing of both (1) assumption of a false identity and (2) an act with intent unlawfully to gain a benefit or to defraud another, the court there did not state that there must be one act manifesting or communicating the assumption of the false identity and a second, separate act establishing intent to defraud. Moreover, other cases

have, without analysis, affirmed convictions for criminal impersonation where only a single act of impersonation was involved. *See People v. Lambert*, 194 Colo. 421, 572 P.2d 839 (1978) (evidence that defendant obtained refund for stolen watch while using false identification was sufficient to sustain guilty verdict on criminal impersonation charge); *People v. Borrego, supra* (evidence sufficient where defendant gave police a fictitious name and address and admitted that he did so intentionally to avoid punishment).

Defendant supports his two-separate-acts argument by emphasizing the phrase "*other act*" in § 18–5–113(1)(e). However, we read "other" in that subsection as referring to an act other than those enumerated in §§ 18–5–113(1)(a) through (d), not as indicating that there must be one overt act demonstrating assumption of a false identity and "another" separate, discrete act showing intent to benefit or defraud.

We recognize that in *People v. Peay*, 5 P.3d 398 (Colo.App.2000), a division of this court concluded that there was insufficient evidence to support a conviction for criminal impersonation because there was no proof that the defendant, who had given the police a false name and a false birth date, had committed "any other act with intent to unlawfully gain a benefit for himself."

In that case, however, the People appear to have simply accepted the proposition that two separate acts had to be proven and then argued that giving the false birth date was the second act.

Further, in rejecting the People's argument, the division relied on *People v. Cole*, 23 Cal.App.4th 1672, 28 Cal.Rptr.2d 788 (1994), which indicates that California law requires a separate act, in addition to the "act of impersonation" itself, to support a conviction for false impersonation. However, other jurisdictions with the same or similar criminal statutes have reached a contrary conclusion. *See Barkus v. State*, 926 P.2d 312 (Okla. Crim.App.1996) (rejecting defendant's claims that another overt act had to be proven, in addition to proof of false impersonation and benefit to defendant, to support conviction for false impersonation); *see also United States v. Gayle* 967 F.2d 483 (11th Cir.1992)

(indictment charging violation of federal criminal impersonation statute need not allege separate overt act beyond the general allegation of acting consistently with the assumed character); *United States v. Cohen*, 631 F.2d 1223 (5th Cir.1980) (rejecting argument that same federal statute required showing of additional act beyond act of assuming or pretending to be a federal officer and noting that the subject of the statute was both a state of mind and an action).

We consider *Peay* distinguishable in that it was addressing an argument different from that presented in this case. However, to the extent *Peay* can be read to support a conclusion contrary to that reached here, we decline to follow it.

In sum, because the evidence of defendant's conduct established that he assumed a false identity and, in that identity, acted with intent to deceive the police so as to avoid prosecution, and because the prosecution was not required to prove an additional, separate act, defendant is not entitled to have his conviction set aside based on insufficiency of the evidence.

## B.

■ Defendant also argues that the conduct supporting his criminal impersonation conviction amounted to no more than a violation of § 18–8–111, which describes the misdemeanor offense of false reporting to authorities; that the General Assembly intended that persons who give false information to the police be prosecuted only under the latter statute; and that, if the evidence here can support a conviction for criminal impersonation, his right to equal protection has been violated because the criminal impersonation statute imposes a greater penalty for the same conduct proscribed by the false reporting statute. We do not agree.

■ Equal protection of the laws is a guarantee of like treatment of all those who are similarly situated. *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). The right to equal protection is violated if different statutes proscribe the same criminal conduct with disparate criminal sanctions. *People v. Marcy*, 628 P.2d 69 (Colo.1981).

Criminal impersonation is a class six felony. Section 18–5–113(2), C.R.S.2000. False reporting to authorities is a class three misdemeanor. Section 18–8–111(2), C.R.S.2000. A person commits false reporting to authorities if, as pertinent here, "he or she knowingly provides false identifying information to law enforcement authorities." Section 18–8–111(1)(d), C.R.S.2000.

Section 18–8–111 does not proscribe the same criminal conduct as that proscribed in the criminal impersonation statute. A conviction under § 18–8–111(1)(d) requires a showing that the information was knowingly provided to law enforcement authorities but, in contrast to the criminal impersonation statute, does not require intent unlawfully to gain a benefit or to injure or defraud another.

We do not agree with defendant that this distinction is irrelevant because an identical intent is "inherent in and inseparable from" the conduct of giving false identifying information to law enforcement authorities.

Although some cases addressing criminal impersonation have found that the intent to defraud could be inferred from the surrounding circumstances, *see People v. Brown, supra; People v. Borrego, supra,* those cases cannot be read as standing for the proposition that criminal intent is invariably to be inferred whenever false identifying information is given to police. Indeed, in *People v. Shaw, supra,* a conviction for criminal impersonation based on the defendant's having given a false name to an arresting officer was reversed because the prosecution had failed to present evidence that the use of the false name would result in a benefit to the defendant. Moreover, the finding of intent in this case was based, not merely on an inference, but on defendant's own testimony that he gave a false name to the arresting officer to avoid going to jail.

Because the false reporting and criminal impersonation statutes do not prescribe disparate sanctions for the same criminal conduct, there is no equal protection violation.

■ We further conclude that the prosecution was not required to charge defendant only with the less serious offense of false reporting.

■ While a prosecutor generally has discretion to charge any or all applicable offenses, *see* § 18–1–408(7), C.R.S.2000, prosecution under a general criminal statute may be barred where a legislative intent is shown to limit prosecution to a special statute. *People v. Warner,* 930 P.2d 564 (Colo.1996).

Defendant cites legislative history indicating that, in enacting § 18–8–111(1)(d), the General Assembly was intending to subject individuals who give wrong information to a police officer, *e.g.,* in connection with a traffic stop, only to misdemeanor liability. However, even if we assume that was the General Assembly's intent, that fact would not preclude prosecution for criminal impersonation here.

Defendant did not simply give false information to police in the course of a traffic stop but, instead, gave the false information when he was apprehended in the course of a serious criminal episode, and gave it with the stated purpose of avoiding the consequences of violating parole. There is nothing in the legislative history or in the language of the statutes to suggest that the General Assembly did not intend to permit prosecution for criminal impersonation in such circumstances.

## II.

■ Defendant next contends that the trial court erred in refusing to suppress statements he made to a police officer in jail after his arrest. We disagree.

■ Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), statements made by defendant during a custodial police interrogation are inadmissible as evidence in a criminal case unless it is established that the defendant was advised of certain constitutional rights and waived those rights. Two requirements must be met before *Miranda* is applicable: the person making the statement must be in custody and the statement must be the product of police interrogation. *People v. Breidenbach,* 875 P.2d 879 (Colo.1994).

■ "Interrogation" for purposes of this analysis refers not only to express questioning by a police officer but also to words or actions that the officer should know are reasonably likely to elicit an incriminating response from the suspect. *People v. Gonzales,* 987 P.2d 239 (Colo.1999).

■ When determining whether a suspect has been subjected to an interrogation, a court is to consider the totality of the circumstances surrounding the making of the statement, focusing its inquiry on whether the interrogator reasonably should have known that his words or actions would cause the suspect to perceive that he was being interrogated. *People v. Gonzales, supra.*

Here, the police officer to whom the statements were made testified at the suppression hearing that, consistent with his practice of letting criminal suspects know what charges they were facing, he had gone to the jail to speak with defendant after he determined that defendant had misrepresented his identity. The officer testified that he told defendant that the police knew his true identity and that he now faced additional charges, including criminal impersonation. The following colloquy ensued:

Q: Did Mr. Johnson make any statements in response to that to you?

A: Yes, ma'am, he did.

Q: What did he say?

A: His reply was I'm pretty well fucked, huh, or something to that effect. I'm not sure exactly what it was.

Q: Did you say anything in response to that?

A: Well, I just kind of laughed with him. I said, "Well, yeah, it kind of sounds that way."

Q: Did the defendant make any other statements?

A: Well, after that he said, well, I was just scared when I got caught and that's why I did that.

The trial court denied the motion to suppress. Although it noted that defendant was in custody and that no *Miranda* advisement had been given, it found that the officer's statements were not designed to elicit a response at all, let alone an incriminating response. Thus, because the statements were not the product of custodial interrogation and were made voluntarily and freely, they were admissible.

We agree with the trial court that, considering the totality of the circumstances, the challenged statements were not the product of an interrogation because they were not elicited by words or actions that the officer should have known were reasonably likely to elicit an incriminating response. Further, the encounter was brief and was entirely devoid of the "inherently coercive interrogation practices that *Miranda* and its progeny traditionally have sought to address." *People v. Gonzales, supra,* 987 P.2d at 242.

■ We reject defendant's contention that, by articulating the inquiry as whether the officer's statements were "reasonably designed" to elicit a response, the trial court analyzed the issue under an incorrect standard. While the focus of the inquiry is to be on the perceptions of the suspect rather than the intent of the police, the officer's intent is still relevant because it may bear on whether he should have known that his words or actions were reasonably likely to elicit an incriminating response. *See Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *People v. Gonzales, supra.*

### III.

Defendant contends that the trial court erred in granting the prosecution's motion to try him and the codefendant jointly. He argues that severance was mandatory or, at a minimum, should have been granted as a matter of discretion. Again, we do not agree.

### A.

■ Severance is to be granted as a matter of right if there is material evidence admissible against one but not all of the parties and admission of that evidence is prejudicial to the party against whom the evidence is not admissible. *Peltz v. People,* 728 P.2d 1271 (Colo.1986); *People v. Escano,*

843 P.2d 111 (Colo.App.1992); § 16–7–101, C.R.S.2000; Crim.P. 14.

█ Even if the evidence at issue would be inadmissible against the defendant seeking severance, severance is not mandatory unless it is also shown that the evidence is prejudicial to the moving defendant. To establish prejudice for the purposes of § 16–7–101, the defendant must show that the evidence was so inherently prejudicial that the jury could not have limited its use to a proper purpose. *See Peltz v. People, supra; People v. Montoya,* 942 P.2d 1287 (Colo.App. 1997).

Defendant argued that severance was warranted here because a joint trial would permit the jury to hear a police officer's testimony regarding certain statements made by the codefendant. The officer's report, tendered to the trial court at the joinder hearing, stated that the codefendant had been bragging to a group of jail inmates and that the officer heard him say:

> [T]here we were at Mesa mall in a stolen car! We took off from 'em & blew out the tire! We just—lights & guns & everything—we just took off running!

The report continued:

> [The codefendant] then looked up at me and says, "Hey, where's the other guy?" I asked, "Who, you mean your partner?" He then replied "yeah."

The trial court concluded that the officer's anticipated testimony was not so inherently prejudicial as to make severance mandatory and did not warrant granting discretionary severance.

At trial, after the officer testified consistently with his report concerning the codefendant's statements, the court instructed the jury that it could consider the testimony only in deciding whether the prosecution had proven the charges against the codefendant, and was to ignore the testimony in deciding whether the charges against defendant had been proven. At the conclusion of the evidence the court again instructed the jury to the same effect.

Even if we assume that, as defendant argues, the officer's testimony would have been inadmissible as to him at a separate trial, we conclude that severance was not mandated.

The evidence was not so inherently prejudicial that the jury could not have limited its use to a proper purpose. Defendant argues that the jury could easily have inferred that he was the person referred to in the statement as the "other guy." However, defendant's theory of defense was that he did not steal the car and did not know it was stolen. He never denied that he was present in the car when the police officer approached and the car took off. The codefendant neither stated nor implied that the "other guy" with him knew that the car was stolen or that he had committed any other crime. As the trial court noted, the statement, at worst, simply constituted evidence that defendant was at the scene when the police initially confronted the two men.

█ Finally, there is a strong presumption that the jury followed the trial court's limiting instructions. *Peltz v. People, supra.* We perceive no basis for concluding that the jury could not or did not properly follow the court's instructions here and consider the statement only as to the guilt of the codefendant.

### B.

█ Nor is defendant entitled to reversal because the court refused to grant a severance as a matter of discretion.

█ If a defendant is not entitled to a severance as a matter of right, a motion for severance is addressed to the sound discretion of the trial court, whose decision will be affirmed absent a showing of abuse of discretion and actual prejudice to the moving party. *Peltz v. People, supra; People v. Montoya, supra.*

█ Factors to be considered in determining whether denial of a severance constitutes an abuse of discretion include: (1) whether the number of defendants or the complexity of evidence is such that the jury will confuse the evidence and the law applicable to each defendant; (2) whether, despite admonitory instructions, evidence admissible against one defendant will improperly be

considered against another; and (3) whether the defenses are antagonistic. *People v. Montoya, supra.*

Defenses are not antagonistic where they do not specifically contradict each other. *People v. Toomer,* 43 Colo.App. 182, 604 P.2d 1180 (1979). Moreover, where joint defendants merely deny participation in the crime and do not present evidence or testimony that the other defendant was solely responsible, mere arguments of counsel suggesting that the other defendant was responsible for the crime do not establish the existence of antagonistic defenses. *People v. Wandel,* 713 P.2d 398 (Colo.App.1985).

Here, there were only two defendants, and the evidence was not so complex as to precipitate jury confusion. Further, as previously discussed, the evidence was not so prejudicial that the jury could not have limited its use to its proper purpose in accordance with the court's instructions. Finally, although counsel for both defendant and the codefendant argued prior to trial that they would be presenting antagonistic defenses, the evidence and testimony actually presented at trial did not establish that the two defenses specifically contradicted each other or were in any way so antagonistic as to render the denial of a severance an abuse of discretion.

## IV.

We also reject defendant's contention that the trial court erred in permitting the prosecutor to recall a defense witness in order to impeach the witness with a prior felony conviction.

The order of proof and presentation of witnesses, including the decision whether to permit a party to recall a witness, is within the sound discretion of the trial court. Unless prejudice is shown, error may not be predicated on such rulings. *Martinez v. People,* 177 Colo. 272, 493 P.2d 1350 (1972); *see also Kelly v. People,* 121 Colo. 243, 215 P.2d 336 (1950).

After the defense witness testified, a recess was taken, at the conclusion of which the prosecutor advised the court that she wanted to recall the witness because she had discovered during the recess that the witness had a prior felony conviction. Defense counsel objected, stating that the prosecutor could have found out about the prior felony prior to trial and that he had intentionally decided not to elicit the prior felony during his direct examination of the witness because he did not believe that the prosecutor was aware of it. The court ruled that the witness could be recalled and allowed defense counsel to reopen his direct examination so that he could elicit the information from this witness.

Defendant argues that the prosecutor waived her opportunity to impeach the witness when she was not prepared to do so at the proper time, on cross-examination. Defendant offers no authority, and we are aware of none, to support this contention. Inasmuch as there has been no showing of prejudice, the ruling will be upheld as a proper exercise of the trial court's discretion. *See Martinez v. People, supra.*

## V.

Defendant was convicted of theft by receiving based on the discovery of stolen firearms in the car. He contends, and we agree, that the mittimus must be corrected to reflect that he was convicted of class two misdemeanor theft by receiving under § 18–4–410(3), C.R.S.2000 (value between $100 and $500), not class four felony theft by receiving under § 18–4–410(4), C.R.S.2000 (value between $500 and $15,000).

The judgment of conviction is affirmed, and the cause is remanded for correction of the mittimus.

JONES and PIERCE *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.