Petitioner: Paul ALVARADO,

v.

Respondent: The PEOPLE of the State of Colorado.

No. 04SC868.

Supreme Court of Colorado.

April 10, 2006.

David S. Kaplan, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, for Petitioner.

John W. Suthers, Attorney General, Catherine P. Adkisson, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Respondent.

HOBBS, Justice.

We granted certiorari to review the court of appeals' judgment in *People v. Alvarado*, No. 03CA0158, 2004 WL 2536862 (Colo.App. Nov.10, 2004), construing Colorado's criminal impersonation statute, § 18–5–113(1)(e), C.R.S. (2005).[1] Defendant argues that this provision requires two acts for conviction: first, the act of impersonation; second, the act from which a defendant intends to receive a benefit. We disagree. This provision proscribes an act of criminal impersonation that

---

1. The question on certiorari reads:
Whether a conviction for criminal impersonation under section 18–5–113(1), C.R.S. (2004) requires proof of an additional act, other than the act of impersonation, from which a defendant intends to receive a benefit.

The statute has not changed in material respect from the time of defendant's crime in 2002, so we cite to the 2005 volume of the statutes.

involves a requirement for the prosecution to prove two culpable mental states.

Reading section 18–5–113 as a whole we determine that subsection (1)(e) of this statute criminalizes a defendant's knowing use of a false or fictitious identity or capacity with the intent to unlawfully gain a benefit for himself or another person or to injure or defraud another person. In this case, the defendant utilized another person's identity to avoid arrest by the police on an outstanding warrant. Accordingly, we uphold the judgment of the court of appeals affirming defendant's criminal impersonation conviction.

## I.

The police stopped a vehicle in which defendant Paul Alvarado ("Alvarado") was a passenger. After arresting the driver due to an outstanding warrant, one of the officers began questioning Alvarado. Alvarado stated that he did not have his license with him, but wrote his name and birth date for the officer. In doing so Alvarado provided a false name, Frank Robert Guerrero, and a false birth date. The officer returned to his car, searched his computer using the false name and birth date, and located a matching record. The computer record reported no outstanding warrants for Frank Robert Guerrero.

Suspicious that Alvarado had not provided accurate information, the officer noted the social security number in the computer record and returned to Alvarado. The officer asked Alvarado to state his social security number. Alvarado began providing numbers that did not match the numbers the officer had noted, then stopped and said he could not remember the rest.

The officer again returned to his car and noted the address associated with Frank Robert Guerrero. Again returning to Alvarado, he asked him for his address. Alvarado replied that he did not remember what address was listed on his license, but that he lived with his uncle near Golden. The officer repeated the name of the street listed on the computer and asked Alvarado if the street name sounded familiar; he replied "no."

Noting that the computer record listed Frank Robert Guerrero as a "junior," the officer asked Alvarado his father's name. Alvarado replied "George." After asking Alvarado why the computer listed him as a "junior" if his father's name was "George," he replied that the computer must be wrong.

The two officers involved in the stop then searched the vehicle and found stolen property. They arrested Alvarado—still posing as Guerrero—for investigation of theft and theft by receiving. The police later learned Alvarado's true identity and that there was a warrant out for his arrest.[2]

The prosecution charged Alvarado with theft by receiving, § 18–4–410, C.R.S. (2002), and criminal impersonation, § 18–5–113(1)(e), C.R.S. (2002). The jury found him guilty of criminal impersonation but not guilty of theft by receiving.

Alvarado appealed his criminal impersonation conviction, arguing that the statute required two acts for conviction, "assuming a false or fictitious identity or capacity" and an additional act from which he intended to gain a benefit. The court of appeals disagreed and affirmed his conviction. We agree with the court of appeals.

## II.

Reading section 18–5–113 as a whole we determine that subsection (1)(e) of this statute criminalizes a defendant's knowing use of a false or fictitious identity or capacity with the intent to unlawfully gain a benefit for himself or another person or to injure or defraud another person. In this case, the defendant utilized another person's identity to avoid arrest by the police on an outstanding warrant. Accordingly, we uphold the judgment of the court of appeals affirming defendant's criminal impersonation conviction.

**2.** The incident in question occurred on March 12, 2002. The police arrested Alvarado six days later, on March 18, 2002. The record does not state at what point between March 12 and March 18 the police discovered Alvarado's true identity and that he was subject to an outstanding arrest warrant.

## A.

### Standard of Review

■ The proper construction of a statute is a question of law we review de novo. *Hendricks v. People,* 10 P.3d 1231, 1235 (Colo.2000). The power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly. *Copeland v. People,* 2 P.3d 1283, 1286 (Colo.2000). Our fundamental responsibility in construing a statute is to give effect to the General Assembly's purpose and intent in enacting it. *Whitaker v. People,* 48 P.3d 555, 558 (Colo.2002).

■ Typically, a criminal offense involves a proscribed act and a culpable mental state. *People v. Hall,* 999 P.2d 207, 216 (Colo.2000). When examining a criminal statute, we read its language to identify the proscribed act and the required mental state. *See People v. Cross,* 127 P.3d 71, 73–74 (Colo.2006). We consider the consequences of a particular construction and avoid constructions that produce illogical or absurd results. *Id.* at 74.

The elements of an offense may have differing mens rea requirements. *People v. Coleby,* 34 P.3d 422, 424 (Colo.2001). A statute may set forth a single offense that can be committed in various ways. *People v. Weinreich,* 119 P.3d 1073, 1076 (Colo.2005).

We conclude that section 18–5–113(1)(e) proscribes one act of criminal impersonation that involves two forms of mens rea.

## B.

### Criminal Impersonation under Section 18–5–113(1)(e)

Section 18–5–113 defines the crime of criminal impersonation that may be committed in a variety of ways:

(1) A person commits criminal impersonation *if* he knowingly assumes a false or fictitious identity or capacity, *and* in such identity or capacity he:

(a) Marries, or pretends to marry, or to sustain the marriage relation toward another without the connivance of the latter; or

(b) Becomes bail or surety for a party in an action or proceeding, civil or criminal, before a court or officer authorized to take the bail or surety; or

(c) Confesses a judgment, or subscribes, verifies, publishes, acknowledges, or proves a written instrument which by law may be recorded, with the intent that the same may be delivered as true; or

(d) Does an act which if done by the person falsely impersonated, might subject such person to an action or special proceeding, civil or criminal, or to liability, charge, forfeiture, or penalty; or

(e) Does any other act with intent to unlawfully gain a benefit for himself or another or to injure or defraud another.

§ 18–5–113, C.R.S. (2005) (emphasis added). Criminal impersonation is a class six felony. *Id.* § 18–5–113(2).

■ Alvarado challenges his conviction under section 18–5–113(e) for the prosecution's alleged failure to offer evidence that he "[did] any other act with intent to unlawfully gain a benefit for himself" pursuant to subsection (1)(e) of section 18–5–113. He characterizes knowingly assuming a false or fictitious identity or capacity as the first act required for conviction, which must then be followed by a separate required second act. We reject this two-act construction of the statute.

The introductory provision of section 18–5–113 contains the words "assumes a false or fictitious identity or capacity." "Assumes" in the context of a false identity in this statute includes "to arrogate, seize, usurp" the identity of another. Webster's Third New International Dictionary 133 (1961). A common sense reading and application of the statute prohibits holding oneself out to a third party as being another person when asked who he or she is. When a person does this in combination with any of the acts enumerated in subsections (1)(a)-(1)(e) he or she commits criminal impersonation. Under the statute, two acts are not required; the prohibited conduct can be seamless: question asked, who are you? answered falsely, in the instance here, to gain the unlawful benefit of avoiding arrest. Thus, the criminalized conduct can occur in the same breath.

1208

This is demonstrated by the words in the introductory language "and in such identity and capacity." These are linkage words. In describing what constitutes commission of criminal impersonation, the General Assembly, by using the words "if" and "and" in the introductory phrase of this statute, plainly tied the assumption of a false or fictitious identity or capacity to defendant's use of it under enumerated circumstances, purposes, or results that manifest completion of the prohibited act of impersonation. Thus, subsection (1)(a) addresses pretending to marry, or sustaining the marriage relation with another person in the absence of that person's connivance; (1)(b), becoming a bail or surety for a party in a civil or criminal proceeding before a court or other officer; (1)(c), confessing a judgment, or subscribing, verifying, publishing, acknowledging, or proving a written instrument intending that it may be delivered as true; and (1)(d), any act that subjects the person impersonated to a civil or criminal liability action or special proceeding.

Each of these four subsections identifies a particularized circumstance, purpose, or result involving defendant's knowing utilization of the false or fictitious identity or capacity. In turn, subsection (1)(e) criminalizes any act involving defendant's knowing utilization of a false or fictitious identity or capacity with the intent to unlawfully gain a benefit for one's self or another, or to injure or defraud another.

■ The plain meaning and function of the statute is shown by the circumstances of this case. Confronted with a police officer asking who he is, Alvarado knowingly utilized another real person's identity to avoid arrest. Alvarado's construction of the statute allows a person to use the identity of another to gain a benefit without any penalty the first time he or she does it. The act must be repeated to incur punishment, an absurd construction and result.

We conclude that subsection (1)(e) of the statute permitted the jury to convict Alvarado for criminal impersonation on proof that he utilized the other person's identity with intent to unlawfully gain a benefit for himself. Because Alvarado has stipulated to knowingly assuming a false identity, the only question is whether he utilized this false identity with intent to unlawfully gain a benefit for himself or another. Here the benefit was avoiding arrest on an outstanding warrant, which Alvarado accomplished until police ferreted out his true identity and thus matched him to the outstanding arrest warrant.

In support of his two-act argument, Alvarado attempts to reformulate the statute as providing for an act in the introductory wording of the criminal impersonation statute followed by additional acts contained in subsections (a) through (e) of section 18–5–113. However, in setting forth the various ways that the offense of criminal impersonation may be committed, subsections (1)(a) through (1)(d) identify particularized ways in which criminal impersonation may be committed. Subsection (1)(e), under which the jury convicted Alvarado, is a generic provision addressing conduct not otherwise particularized in the statute. The General Assembly narrowed the potential breadth of this provision by circumscribing its application with a requirement that the prosecution prove an additional culpable mental intent beyond the knowingly culpable mental state of the statute's introductory language.

Some but not all of subsections (1)(a) through (1)(e) require an additional culpable mental state. Subsection (1)(e) addresses any act of criminal impersonation done "with intent to unlawfully gain a benefit for [defendant] or another or to injure or defraud another." On the other hand, subsections (1)(a) and (1)(b) do not contain an additional mens rea component. For example, an individual who knowingly assumes a false identity when marrying another, without the other person's connivance, is guilty of criminal impersonation under (1)(b) regardless of any additional intent.

Subsection (1)(c), like subsection (1)(e), requires an additional culpable mental state. A person who has knowingly assumed a false identity in confessing judgment under subsection (c) must do so "with the intent that the same may be delivered as true."

The General Assembly's treatment of the criminal impersonation offense supports our

analysis. In 1971, the legislature amended the criminal code, including the criminal impersonation statute. Prior to the 1971 change, current paragraphs (1)(d) and (1)(e) were found, with some differences, in a single paragraph. That provision read as follows:

> Does any other act in the course of any act or proceeding whereby if it were done by the person falsely personated, such person might in any event become liable to an action or special proceeding, civil or criminal, or to pay a sum of money, or to incur a charge, forfeiture, or penalty, *or whereby any benefit might accrue to the offender or to another person.*

§ 40–17–1(e), C.R.S. (1963) (emphasis added).

By its 1971 revision, Ch. 121, sec. 1, § 40–5–113, 1971 Colo. Sess. Laws 388, 436, the legislature separated the "benefit" aspect of committing the crime of criminal impersonation into a separate provision containing an additional culpable mental state, the current section 18–5–113(1)(e). The legislature's action in this regard supports our conclusion that it intended this subsection to function as a generic provision that follows the identification of particularized ways in which the crime of criminal impersonation is committed.

We disagree with Alvarado's injection of Colorado's "false reporting" statute into the argument for reversal of his conviction. Alvarado contends that he knowingly assumed a false identity in connection with a traffic stop, and this is punishable only under section 18–8–111, C.R.S. (2005), a class three misdemeanor.[3] We disagree.

The General Assembly may define one or more offenses that proscribe a defendant's conduct. *See* § 18–1–408(1), C.R.S. (2005) ("When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense."). Alvarado ignores the

point that criminal impersonation is a separate offense from false reporting.

In this case, Alvarado knowingly utilized a false identity to gain the unlawful benefit of avoiding arrest under an outstanding warrant by police officers. An act of criminal impersonation such as this done with intent to gain an unlawful benefit is not part of the false reporting statute. The prosecution could have charged Alvarado with both offenses, and the jury could have returned convictions for both.

In *People v. Johnson,* 30 P.3d 718 (Colo. App.2000), the court of appeals correctly noted that the criminal impersonation statute "requires the additional showing of intent to gain a benefit or injure or defraud," *id.* at 721, whereas false reporting does not, *id.* at 723. The two statutes contain different elements and validly prescribe different penalties.

When interpreting statutes, we may consider the object the legislature sought to accomplish. § 2–4–203(a), C.R.S. (2005). The disparate placement of the false reporting and criminal impersonation statutes within the criminal code reinforces our conclusion that the legislature intended to establish separate offenses. The false reporting provision appears under governmental operation offenses. §§ 18–8–101 to –804, C.R.S. (2005). The legislature placed the criminal impersonation provision within offenses involving forgery, simulation, impersonation and related offenses. §§ 18–5–101 to –120, C.R.S. (2005).

Clearly, the General Assembly acted within its prerogative in defining an offense more serious than false reporting that operates to proscribe intentionally avoiding arrest through knowingly assuming a false identity when responding to a police officer. Alvarado's construction of the statute would substitute a lesser offense for the greater, an absurd reading in light of the General Assembly's obvious statutory word choice and

---

**3.** 18–8–111. False reporting to authorities.

    (1) A person commits false reporting to authorities, if:

    . . .

    (d) He or she knowingly provides false identifying information to law enforcement authorities.

    (2) False reporting to authorities is a class 3 misdemeanor.

We again cite to the 2005 volume of the statutes because this section remains unchanged from the 2002 version.

its placement of the two offenses in different parts of the criminal code.

## III.

Accordingly, we affirm the judgment of the court of appeals.

Justice BENDER dissents.

Justice EID does not participate.

Justice BENDER, dissenting.

The majority holds that Colorado's criminal impersonation statute prohibits "the assumption of a false or fictitious identity or capacity" that "involv[es]" one of five enumerated "circumstance[s], purpose[s], or result[s]," including the catch-all category in 18–5–113(1)(e), under which Alvarado was convicted. *See* Maj. Op. at 1208. Hence, the majority concludes that subsection 18–5–113(1)(e) does not require the prosecution to prove two acts, both the act of impersonation and the act from which a defendant intends to receive a benefit. Instead, the majority holds that this subsection "criminalizes any act involving [a] defendant's knowing utilization of a false or fictitious identity or capacity with the intent to unlawfully gain a benefit for one's self or another, or to injure or defraud another." Maj. Op. at 1208. Because the plain language of subsection 18–5–113(1)(e) states that a person commits criminal impersonation when he knowingly assumes a false or fictitious identity, and, in such identity he commits an additional act with the intent to unlawfully gain a benefit, I respectfully dissent.

Colorado's criminal impersonation statute states that a person commits criminal impersonation if he knowingly assumes a false identity and in such identity does one of five additional acts, some of which contain their own culpable mental state:

A person commits criminal impersonation if he *knowingly assumes a false or fictitious identity* or capacity, *and* in such identity or capacity he:

(a) *Marries,* or pretends to marry, or to sustain the marriage relation toward another without the connivance of the latter; or

(b) *Becomes bail or surety* for a party in an action or proceeding, civil or criminal, before a court or officer authorized to take the bail or surety; or

(c) *Confesses a judgment,* or subscribes, verifies, publishes, acknowledges, or proves a written instrument which by law may be recorded, with the intent that the same may be delivered as true; or

(d) *Does an act* which if done by the person falsely impersonated, might subject such person to an action or special proceeding, civil or criminal, or to liability, charge, forfeiture, or penalty; or

(e) *Does any other act with intent to unlawfully gain a benefit* for himself or another or to injure or defraud another.

§ 18–5–113(1), C.R.S. (2005) (emphasis added). Hence, a person who knowingly assumes a false identity is not liable under the statute. Instead, a person must knowingly assume a false identity *and* do an additional act: marry, post bail, confess a judgment, or do an act as described in (1)(d) or (1)(e).

To reach its conclusion that subsection (1)(e) of this statute requires the commission of only one act with two separate mental states, the majority misconstrues the nature of the five enumerated acts in subsections (1)(a) through (1)(e), and ignores the word "and"[1] separating the introduction of the statute from the enumerated acts. I will address these issues in turn, beginning with the meaning of the word "and" in the statute.

---

1. The majority reasons that "by using the words 'if' and 'and' in the introductory phrase" of the criminal impersonation statute, the General Assembly "plainly tied the assumption of a false or fictitious identity or capacity to [a] defendant's use of it under enumerated circumstances, purposes, or results." Maj. Op. at 1208. I find this interpretation unconvincing. The statute merely states that "[a] person commits criminal impersonation if" he does the following specified conduct. § 18–5–113(1), C.R.S. (2005). This statutory formula, "a person commits Crime X, if he does Y and Z" does not imply that the list that follows the word "and" includes mere "circumstances, purposes, or results" rather than a list of additional acts, any one of which a person must do to be liable under the statute.

The term "assumes" in this statute does mean, as the majority states, " 'to arrogate, seize, [or] usurp' the identity of another." Maj. Op. at 1207. However, the statute connects the act of assuming to subsections (1)(a) through (1)(e) with the term "and." The word "and" means "also; in addition; moreover; as well as." *Webster's New World College Dictionary* 51 (3rd ed.1996). Therefore, to convict a person of criminal impersonation, the prosecution must prove that he committed the act of knowingly assuming a false identity *and,* in addition to this, that he also did one of the acts enumerated in subsections (1)(a) through (1)(e). Hence, to be convicted, a person must knowingly assume a false identity, *and* in that identity he must also: marry, post bail, confess a judgment, or do an act described in (1)(d) or (1)(e). Because the majority misinterprets the term "and" to mean "in combination with" rather than "in addition to," it concludes that "two acts are not required; the prohibited conduct can be seamless." Maj. Op. at 1207. In my view, this conclusion conflicts with the plain meaning of the term "and" in the statute.

The majority does not view subsections (1)(a) through (1)(e) as enumerating additional acts that a person must do in addition to assuming a false identity. Instead, the majority characterizes certain of these additional acts as "ways that the offense of criminal impersonation may be committed" and others as merely adding an "additional culpable mental intent." Maj. Op. at 1208. I find these characterizations unpersuasive in light of the plain meaning of the statutory language.

First, as discussed earlier, a person must do the conduct enumerated in (1)(a) through (1)(e) in addition to knowingly assuming a false identity. Second, these subsections do not describe mere ways in which a person assumes a false identity—they enumerate discrete acts. For instance, marrying is not merely "a particularized way[ ] in which"

something is done. Maj. Op. at 1208. Rather, marrying is an act—it is something someone does—not a manner in which someone does something. *See Webster's New World College Dictionary* 13 (3rd ed.1996) (defining "act" to mean "a thing done; deed"). Likewise, confessing to a judgment and posting bail are acts that a person could engage in to be liable under the statute.

Any doubt that subsections (1)(a) through (1)(e) enumerate additional acts rather than manners in which assuming a false identity may occur is laid to rest by the plain language of subsections (1)(d) and (1)(e). When read with the introductory language, subsection (1)(d) states that a person commits criminal impersonation if he knowingly assumes a false identity "*and* in such identity ... *does an act* which if done by the person falsely impersonated" might subject that person to liability. § 18–5–113(1)(d), C.R.S. (2005) (emphasis added). Subsection (1)(e) states that a person commits criminal impersonation if he knowingly assumes a false identity "*and* in such identity ... does any other *act* with intent to unlawfully gain a benefit." § 18–5–113(1)(e), C.R.S. (2005) (emphasis added).[2] The word "act" demonstrates that the General Assembly intended these subsections to enumerate additional acts, not manners of assuming a false identity or additional mental states that apply to the act of assuming a false identity.

The majority reads the word "act" out of subsection (1)(e) and interprets the statute as if it read "A person commits criminal impersonation if he knowingly assumes a false identity with the intent to unlawfully gain a benefit." In doing so, the majority interprets the intent element of subsection (1)(e) to refer not to the "act" enumerated in that subsection but rather to the act of assuming a false identity. Hence, the majority concludes that the intent element in (1)(e) requires "the prosecution prove an additional culpable mental intent beyond the knowingly

---

**2.** Alvarado wisely concedes that the word "other" in subsection (1)(e) likely refers to an act other than an act described in (1)(d) rather than to an act other than the act of assuming a false identity. Nonetheless, this subsection refers to an "act," and read together with the introduc-

tion, and leaving out the word "other," this subsection states that it is unlawful to assume a false identity and in that identity to do any act with the intent to unlawfully gain a benefit. *See* § 18–5–113(1)(d)–(e), C.R.S. (2005).

culpable mental state of the statute's introductory language." Maj. Op. at 1208. This interpretation conflicts with the language of (1)(e) which requires that a person does an *act with the intent to gain a benefit.* § 18–5–113(1)(e), C.R.S. (2005). Intent to gain an unlawful benefit is the culpable mental state for the additional act enumerated in the catch-all provision (1)(e), not an additional culpable mental state for the act of assuming a false identity.

Finally, while superfluous to a plain-language analysis, I note that the criminal impersonation statute's location in Article 5 of the Colorado Criminal Code supports the conclusion that the General Assembly did not intend this statute to apply to a person who gives a false name to police. Article 5, part 1 contains offenses involving fraud, such as forgery, trademark counterfeiting, and obtaining a person's signature by deception. These fraud crimes generally involve a person getting money, benefits, or recognition that is not due to him. *See, e.g.,* § 18–5–102, C.R.S. (2005) (concerning forgery of a written instrument); § 18–5–110.5, C.R.S. (2005) (prohibiting trademark counterfeiting); § 18–5–112, C.R.S. (2005) (prohibiting the obtaining of a signature by deception). None of the crimes in part 1 or in Article 5 involve interactions with police or avoiding arrest, and it appears illogical to conclude that the legislature intended the catch-all provision of the criminal impersonation statute to extend outside the contours of criminal fraud to reach conduct involving avoiding arrest during a routine stop of a motor vehicle.

For these reasons, I respectfully dissent.