DEPARTMENT OF TRANSPORTATION, State of Colorado, Plaintiff–Appellant,

v.

CITY OF IDAHO SPRINGS, a municipal corporation, Defendant–Appellee.

No. 07CA0274.

Colorado Court of Appeals, Div. I.

May 1, 2008.

Certiorari Denied Sept. 22, 2008.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Harry S. Morrow, First Assistant Attorney General, Megan Paris Rundlet, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellant.

Murray Dahl Kuechenmeister & Renaud, LLP, Malcolm M. Murray, Debra S. Kalish, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge RUSSEL.

Plaintiff, the Colorado Department of Transportation (CDOT), appeals from an order denying its request for declaratory judgment against defendant, the City of Idaho Springs. We affirm.

## I. Background

The city has adopted regulations under the Areas and Activities of State Interest Act (AASIA), sections 24–65.1–101 to –502, C.R.S.2007. It asserts that CDOT must comply with these regulations. CDOT disagrees.

To settle the question, CDOT filed an action in the district court seeking declaratory relief under C.R.C.P. 57. In support of its request, CDOT argued that it was exempt from the city's regulatory scheme for three reasons:

1. CDOT is not subject to regulations promulgated under the AASIA because it is not a "person" within the meaning of that law.

2. Alternatively, the AASIA conflicts with, and implicitly has been repealed

by, provisions in Title 43 of the Colorado Revised Statutes.

3. Insofar as they may apply to CDOT's core functions, the city's regulations are preempted by Title 43.

The district court denied CDOT's motion for declaratory relief and certified its order as a final judgment under C.R.C.P. 54(b).

## II. Statutory Schemes

CDOT's arguments center on the relationship between the AASIA and Title 43. We briefly introduce these statutory schemes.

### A. AASIA

The AASIA is a land use act. It allows local governments to designate certain areas of land and physical activities as "matters of state interest." §§ 24–65.1–201, –203, C.R.S. 2007. Once a local government has designated an area or activity as a matter of state interest, it must develop regulations (consistent with statutory criteria) to protect the utility, value, and future of the land. *See* §§ 24–65.1–101(1)(a), –402, C.R.S.2007.

Any person who would develop land in a designated area or conduct a designated activity must obtain a permit from the local government. § 24–65.1–501(1)(a), C.R.S.2007. If the proposed development or activity does not comply with the applicable regulations, the permit application must be denied. § 24–65.1–501(3)–(4), C.R.S.2007. Any person who does not obtain a permit may be enjoined from conducting the development or activity. § 24–65.1–501(6), C.R.S.2007.

### B. Title 43

Title 43 governs part of the state's transportation system. Among other things, it places CDOT in charge of developing the state transportation plan. *See* § 43–1–1101, C.R.S.2007. It also requires CDOT to "construct and maintain all roads comprising the state highway system." § 43–2–102, C.R.S. 2007.

Title 43 ensures that the state's transportation planning process complies with 23 U.S.C. §§ 134–135 and 23 C.F.R. pt. 450 so that Colorado may be eligible for federal funding. *See, e.g.,* 23 U.S.C. § 134(k)(5) (fed-

eral funds may be withheld for failure to certify compliance with federal law). It divides the state into transportation planning regions and allows each regional commission to prepare a regional transportation plan. § 43–1–1103, C.R.S.2007. CDOT then integrates the regional plans into a statewide plan. *See* §§ 43–1–1101, –1102(7), –1103(5), C.R.S.2007; *see also* 23 U.S.C. § 135(g).

### III. Discussion

■ CDOT contends that the district court erroneously rejected its arguments in denying declaratory relief. Because these arguments present issues of statutory interpretation, we review de novo. *Bostelman v. People*, 162 P.3d 686, 689 (Colo.2007).

For the following reasons, we conclude that the district court properly rejected CDOT's arguments.

### A. CDOT Is a Person

■ As noted, the AASIA requires any "person" to obtain a permit before developing land in an area of state interest or conducting an activity of state interest. § 24–65.1–501(1)(a). We conclude that CDOT is a "person" under the act.

The AASIA defines "person" as follows: "As used in this article, unless the context otherwise requires ... 'Person' means any individual, limited liability company, partnership, corporation, association, company, or other public or corporate body, including the federal government, and includes any political subdivision, agency, instrumentality, or corporation of the state." § 24–65.1–102(6), C.R.S.2007.

CDOT recognizes that it qualifies as a "person" under this statutory definition. But it contends that this definition does not control. Relying on the introductory clause of section 24–65.1–102, C.R.S.2007, CDOT argues that the definition is inapplicable because "the context otherwise requires."

We reject this argument.

### 1. Meaning of "Context"

■ We begin by considering this question: What did the legislature mean when it said, "unless the context otherwise requires"? What information constitutes "the context"?

■ As with all statutory terms, we construe "context" according to its plain and ordinary meaning. *See Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004). And we conclude, contrary to CDOT's view, that "context" does not refer to circumstances that could arise if CDOT were required to obtain permits from local governments. Instead, context refers only to pertinent statutory language—the text of the AASIA and related statutes. *See Pima Fin. Serv. Corp. v. Selby,* 820 P.2d 1124, 1128 (Colo.App.1991) (the phrase, "unless the context otherwise requires," refers not to the factual context of a particular transaction but to the language of the statute); *see also Rowland v. Cal. Men's Colony,* 506 U.S. 194, 199–200, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (" 'Context' here means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts, and this is simply an instance of the word's ordinary meaning.").

We therefore focus on statutory text in determining whether to disregard the definition of "person" set forth in section 24–65.1–102(6).

### 2. Application

Contrary to CDOT's view, the relevant statutory language indicates that CDOT is a person under the AASIA.

As noted, the AASIA allows local governments to regulate various activities of state interest. § 24–65.1–402(1), C.R.S.2007. One of these activities is the "[s]ite selection of arterial highways and interchanges and collector highways." § 24–65.1–203(1)(e), C.R.S. 2007.

Because the site selection of arterial highways is an activity often conducted by CDOT (under the provisions of Title 43), the context suggests that the legislature intended to subject CDOT to some degree of local regulatory control under the AASIA. *See also* § 24–65.1–104(3), C.R.S.2007 (for purposes of the AASIA, an arterial highway is a "limited-access highway ... constructed under the supervision of [CDOT]"). If CDOT were

exempt from local control, parts of the AASIA would be meaningless. *See Colo. Ins. Guar. Ass'n v. Menor,* 166 P.3d 205, 212 (Colo.App.2007) (a court should not interpret a statute so as to render any part of it meaningless).

### 3. Absurdity

CDOT predicts that if we apply the statutory definition (and thereby subject it to regulation under the AASIA), cities and counties will adopt burdensome schemes that will lead to protracted delays, loss of federal funding, loss of uniformity in the highway system, and other procedural and financial hardships. It suggests that, to avoid such absurd results, we must recognize that it is not a "person" under the AASIA.

We reject this suggestion. Although we must avoid interpretations that lead to absurd results, *see Alvarado v. People,* 132 P.3d 1205, 1207 (Colo.2006), we do not agree that the potential results are absurd.

Every legislature must grapple with the problem of unintended consequences. If a statute gives rise to undesirable results, the legislature must determine the remedy. *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930). Courts may not rewrite statutes to improve them. *Badaracco v. Comm'r of Internal Revenue,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). We therefore will disregard unambiguous statutory language only when the resultant absurdity is "so gross as to shock the general moral or common sense." *Crooks,* 282 U.S. at 60, 51 S.Ct. 49.

Here, the potential results do not justify a departure from the AASIA's unambiguous language. CDOT's dire predictions may not come true, possibly because local governments may choose to act reasonably. But even if CDOT's forecast is accurate, the situation will not be so difficult as to shock the general or moral common sense. The problem, if it arises, is one that the legislature is well equipped to address.

### B. The Schemes Do Not Conflict

CDOT advances this alternative argument: To the extent that the AASIA would allow local governments to regulate CDOT's activities, the act has been implicitly repealed. CDOT's position rests on two premises: (1) by allowing local control over CDOT's core functions, the AASIA necessarily conflicts with the transportation scheme set forth in Title 43; and (2) if the two schemes conflict, Title 43 prevails because its provisions are more specific and more recently enacted.

We conclude that CDOT's argument fails on its first premise because the two schemes do not necessarily conflict.

If possible, we will construe statutes to avoid inconsistency. *City of Florence v. Pepper,* 145 P.3d 654, 657 (Colo.2006). Only if the statutory language is irreconcilable will we apply the doctrine of "repeal by implication." *Id.; Moran v. Carlstrom,* 775 P.2d 1176, 1183 (Colo.1989) (statutes do not conflict if it is possible to give effect to both).

Here, we perceive no manifest or irreconcilable conflict between the AASIA and the statutes that govern the transportation planning process, sections 43–1–1101 to –1105, C.R.S.2007. Although Title 43 vests CDOT with broad authority over the planning and construction of highways, the exercise of this authority does not necessarily require that CDOT be free of every conceivable regulation under the AASIA. *Cf. City & County of Denver v. Bd. of County Comm'rs,* 782 P.2d 753, 761–62 (Colo.1989) (local regulation under the AASIA does not impermissibly infringe on a city's exercise of home rule powers to construct and operate a waterworks system).

Indeed, the AASIA and Title 43 are easily reconciled because the schemes advance compatible goals. Although CDOT has the final word over the state's transportation plan, it must consider local concerns "including examination of the impact of land use decisions on transportation needs and the exploration of opportunities for preservation of transportation corridors." § 43–1–1104(5)(b), C.R.S. 2007. Similarly, local governments must exercise their regulatory powers under the AASIA in a manner that does not conflict with state transportation plans. *See, e.g.,* § 24–65.1–204(5)(c), C.R.S.2007 ("Arterial highways and interchanges and collector high-

ways shall be located so that ... [d]irect conflicts with adopted local government, regional, and state master plans are avoided.").

## C. Local Regulation Is Not Preempted

CDOT contends that Title 43 preempts the city's ability to regulate transportation planning or construction. We perceive no express or implied preemption and do not consider the issue of operational preemption.

### 1. Introduction

Ordinarily, we would preface our preemption analysis by determining whether the local regulations are within the scope of the local government's legislative authority. *See Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1055 (Colo.1992). Here, however, CDOT does not argue that the city (1) improperly designated areas or activities of state interest or (2) adopted regulations that are contrary to the statutory guidelines. We therefore assume, without deciding, that the city's regulations are within the scope of its legislative authority.

■ The purpose of the preemption doctrine is to establish a priority between potentially conflicting laws enacted by various levels of government. *Id.* A state statute may preempt a local regulation in three ways: (1) "the express language of the statute may indicate state preemption of all local authority over the subject matter"; (2) "preemption may be inferred if the state statute impliedly evinces a legislative intent to completely occupy a given field by reason of a dominant state interest"; and (3) "a local law may be partially preempted where its operational effect would conflict with the application of the state statute." *Id.* at 1056–57.

■ Because CDOT has not applied for a permit, we have no reason to consider the validity of any particular regulation. *See City & County of Denver v. Bd. of County Comm'rs*, 782 P.2d at 766 ("Because Denver has not submitted to the permit application process ... there is no justiciable case or controversy involving particular regulations."). We are reviewing a facial challenge to the entire regulatory scheme and therefore must determine whether Title 43 would

preempt every possible condition that the city could place on its permit. *See Colo. Mining Ass'n v. Bd. of County Comm'rs*, 170 P.3d 749, 754 (Colo.App.2007) *(cert. granted Nov. 13, 2007); see also Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987) (facial preemption challenge requires that "there is no possible set of conditions the [state regulator] could place on its permit that would not conflict with federal law").

### 2. Express Preemption

■ The legislature has recognized that state and local governments both have an interest in transportation. *See* §§ 24–65.1–203, 43–1–1101. Because transportation is a matter of shared state and local interest, we will recognize a legislative intent to preempt local authority only if that intent is expressed in unequivocal language. *Bd. of County Comm'rs v. Bainbridge, Inc.*, 929 P.2d 691, 710–11 (Colo.1996).

Contrary to CDOT's argument, section 43–1–1101 does not express an unequivocal intent to preempt all local regulation of transportation issues. The statute indicates that CDOT is "the proper body, in cooperation with regional planning commissions and local government officials, for developing and maintaining the state transportation planning process and the state transportation plan." § 43–1–1101. But the statute does not foreclose all local regulation; it remains open to the possibility that the statewide planning process will leave some questions unresolved and that local governments may decide those matters by regulation.

### 3. Implied Preemption

■ "[P]reemption may be inferred if the state statute impliedly evinces a legislative intent to completely occupy a given field by reason of a dominant state interest." *Bowen/Edwards*, 830 P.2d at 1056–57. Here, contrary to CDOT's contention, we see no evidence of legislative intent to "completely occupy" the field of transportation planning.

■ Although Title 43 places CDOT in charge of the statewide planning process, it does not suggest—by its language, purpose,

or scope—that the legislature intended to displace all local regulation of transportation issues. Title 43 gives local governments a voice in the statewide planning process, but it does not foreclose other methods of control, such as regulation under the AASIA. *See Bainbridge*, 929 P.2d at 711 (rejecting implied preemption where tax provisions advanced one method for raising revenue, but no language indicated that this was the exclusive method).

Any doubt on this score is answered by the AASIA. We cannot conclude that CDOT was meant to occupy the entire field of transportation planning when the legislature has indicated that local governments may regulate the site selection of airports, transit terminals, and highways. *See* §§ 24–65.1–203, –402(1). CDOT's role in transportation planning does not necessarily conflict with, or dominate, the city's interest in preserving the use and value of land. *See Bowen/Edwards*, 830 P.2d at 1058 (rejecting implied preemption where the state's interest "is not so patently dominant over a county's interest in land-use control, nor are the respective interests of both the state and the county so irreconcilably in conflict, as to eliminate by necessary implication any prospect for a harmonious application of both regulatory schemes").

### 4. Operational Preemption

■ Operational conflict arises when a local interest is implemented in a way that materially impedes or destroys a state interest. *Bowen/Edwards*, 830 P.2d at 1059. When this occurs, "local regulations may be partially or totally preempted to the extent that they conflict with the achievement of the state interest." *Id.*

We acknowledge that local governments could enact regulations that would impair CDOT's ability to accomplish its duties, and we recognize that such regulations could be invalid under the doctrine of operational preemption. But we cannot determine whether the city has enacted such a regulation because CDOT has not developed a record on

this issue. *See id.* at 1060 ("Any determination that there exists an operational conflict between the county regulations and the state statute or regulatory scheme . . . must be resolved on an ad-hoc basis under a fully developed evidentiary record.").

The order is affirmed.

Judge CRISWELL * and Judge MÁRQUEZ * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.