987 P.2d 284

Gerald W. MARTIN and Carol J. Martin, husband and wife, Plaintiffs–Appellant,

v.

John Lincoln HOBLIT, a/k/a John Lincoln Hoblitt, Defendant– Respondent.

No. 24798.

Supreme Court of Idaho, Coeur d'Alene, April 1999 Term.

Aug. 24, 1999.

Rehearing Denied Nov. 3, 1999.

WALTERS, Justice.

Gerald and Carol Martin appeal from the dismissal of their complaint against the defendant for failure to complete timely service of process as required by Idaho Rule of Civil Procedure 4(a)(2). We affirm the dismissal order.

## BACKGROUND AND PROCEDURAL HISTORY

The facts are concisely stated in the district court's Opinion and Order Re: Motion to Dismiss:

Plaintiffs filed their complaint on May 4, 1995, alleging that the negligence of defendant in the operation of his vehicle on May 5, 1993, resulted in personal injuries to plaintiff husband. A summons was issued by the Office of Clerk of Court at the time the complaint was filed, but service thereof was not immediately attempted.

Plaintiffs did not engage counsel until the statute of limitations had nearly run on their cause of action. They had at some point instituted communication with an independent adjusting firm, Sierra Claims Services, Inc., which had been handling the claim for defendant's insurer, Insurance Service Underwriters of the Southwest, Inc. Around the first of May, 1995, plaintiffs contacted their present counsel, who prepared and filed the complaint and obtained concurrent issuance of the summons on May 4. On May 22 plaintiffs' attorney spoke by telephone with Dan B. Villarreal, a litigation supervisor with defendant's carrier, and told him that she had not yet served the defendant and did not intend to do so "until such time as we are unable to reach an agreement on the settlement of this claim." Villarreal confirmed the existence of the conversation and its contents by a letter of the same date.

On June 9, 1995, Mary Pierce, a claims representative with Sierra Claims Service, Inc., wrote to plaintiffs' counsel to "follow up to previous telephone conversations and correspondence regarding the above-captioned matter." Pierce's letter states that, "[a] review of the file indicates you do not intend to serve our insured in the hopes we can reach an amicable resolution. If this

McFadden Law Offices, St. Maries, for appellant. Cathleen D. McFadden argued.

Quane, Smith, Coeur d'Alene, for respondent. Michael L. Haman argued.

should change, please let me know so we may take the proper steps." The Villarreal and Pierce letters each expressed a desire to work towards "an amicable resolution."

The December 29, 1995, affidavit of plaintiffs' counsel, in referring to the telephonic communication between herself and the representative of Sierra Claims Service, Inc., asserts:

The insurance adjuster and I agreed that defendant would not be served until such time as we were unable to reach an agreement on settlement of this claim.

On September 28, 1995, Pierce wrote plaintiffs' counsel to advise that she had received and reviewed counsel's correspondence of September 19, 1995, transmitting additional documentation regarding plaintiff husband's injury. Her letter goes on to note that she was reviewing the complete medical documentation, as supplemented by that recently received, that the total of medical bills thus far was $1,120.52, and that counsel should submit all the medical bills as it appeared that the adjuster's documentation was incomplete. Her letter closes with the statement, "after I have had a chance to review the complete file, I will be back in touch with your office."

On October 19, 1995, plaintiffs' counsel wrote to Ms. Pierce, advising her that counsel had forwarded the summons and complaint for service on Mr. Hoblit as the six month time limitation for service was rapidly approaching, and inquired as to policy limits, asking, "can we settle this claim without incurring more legal fees?"

On October 31, 1995, Pierce wrote to plaintiffs' counsel in reply to the October 19 letter, acknowledging receipt thereof and requesting that counsel provide proof of service if that has occurred. Pierce also advised that policy limits were $15,000/$30,000, and that from her review of the medical documentation she did not believe that she had enough to properly evaluate the claim but at that point did not feel it was a policy limits case. She again noted the request for further documentation and observed that apparently there was none.

On October 30, 1995, the Bonner County Sheriff sought service upon defendant and determined that he was no longer living in that county. Counsel learned at that time that he had moved out of the state of Idaho.

On November 8, 1995, four days beyond the six-month limitation of I.R.C.P. 4(a)(2), plaintiffs' counsel obtained an order directing personal service outside the state or by publication, the personal service contemplated to be in Mount Vernon, Washington. On November 20, the Skagit County Sheriff determined that defendant's address in Mount Vernon was simply a mailbox business, and he was not able to determine where defendant actually resided.

Plaintiffs' counsel wrote Pierce on November 28, 1995, advising that defendant had apparently moved to the State of Washington but that her only address for him was a mailbox business. She requested an actual address where service could be perfected and advised that she would serve through publication if that was not forthcoming.

On December 4, 1995, Pierce wrote to plaintiffs' counsel to advise that they had referred the matter to defense counsel noted above. Shortly thereafter, counsel conferred and plaintiffs' attorney asked if Mr. Adams would accept service on behalf of defendant. Adams replied that he was not authorized to accept service, and on December 14, 1995, moved to dismiss for want of timely service of process.

On January 16, 1996, plaintiffs' counsel served the Idaho Secretary of State pursuant to I.C. § 49–2421, concurrently mailing a copy of the process by registered mail to defendant.

The district court granted Hoblit's motion to dismiss, finding that the Martins had not shown good cause for the failure to serve the complaint within six months as required by Rule 4(a)(2). The court found that there was no agreement between the parties to waive the 4(a)(2) time period. The court also found that there was no affirmative evasion of service by Hoblit. The district court observed: "What we have here is a defendant who sometime over the two-year period following

the accident decided to move from the State of Idaho and, having no affirmative duty to keep plaintiffs or their counsel advised as to his whereabouts, did not do so."

The Martins appealed and argued that the district court erred in finding no good cause to avoid dismissal of the action under I.R.C.P. 4(a)(2). The Court of Appeals reversed the district court relying heavily on a new standard of review announced by this Court in *Sammis v. Magnetek, Inc.,* 130 Idaho 342, 941 P.2d 314 (1997), and followed by this Court in *Telford v. Mart Produce Inc.,* 130 Idaho 932, 950 P.2d 1271 (1998). Viewing the facts in the light most favorable to the Martins and drawing all reasonable inferences in their favor, the Court of Appeals held that the Martins had shown good cause because they had attempted to serve Hoblit within the six-month period and there were ongoing settlement negotiations.

Hoblit filed a petition for review which this Court granted.

## STANDARD OF REVIEW

Where review has been granted, the established procedure is that we turn directly to the decision of the trial court and to the briefs which were considered by the Court of Appeals, following which we hear oral argument and take the case under advisement. We extend serious consideration to the views of the Court of Appeals, having previously reviewed that court's opinion in considering the merits of the petition seeking review. Where there is no dispute as to the factual circumstances, our review consists of ascertaining the effect of applicable law on the undisputed facts. *Simplot v. W.C. Owens, M.D., P.A.,* 119 Idaho 243, 244, 805 P.2d 449, 450 (1990).

## DISCUSSION

I.R.C.P. 4(a)(2) requires that service of the summons and complaint be made "upon a defendant within six months after the filing of the complaint and [if] the party on whose behalf such service was required

cannot show *good cause* why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice." When the defendant makes a *prima facie* showing that service of process was not accomplished during the six months prescribed by the rule, the district court must determine whether there was good cause for the untimely service. The burden is on the party who failed to effect timely service to demonstrate good cause. *Id.;* *Sammis,* 130 Idaho at 346, 941 P.2d at 318.

The determination of whether good cause exists is a factual one. *Sammis,* 130 Idaho at 346, 941 P.2d at 318, *citing Shaw v. Martin,* 20 Idaho 168, 175, 117 P. 853, 855 (1911). The Court in *Shaw,* that was not bound by a statute or rule defining timely service of a complaint, instructed that the factual question was " to be determined upon the proof offered and the diligence shown by the plaintiff in making such service, and must be decided by the court upon the facts as they are presented." *Shaw,* 20 Idaho 168, 175, 117 P. 853, 855.[1] In ascertaining whether good cause exists, there is no bright-line test; the question of whether legal excuse has been shown is a matter for judicial determination based upon the facts and circumstances in each case. *See State v. Beck,* 128 Idaho 416, 419, 913 P.2d 1186, 1189 (Ct.App. 1996). *See also State v. Hobson,* 99 Idaho 200, 202, 579 P.2d 697 (1978).

The complaint in this action was filed on May 4, 1995. Service of process did not take place within six months or by November 4, 1995, as prescribed by Rule 4(a)(2). It is this six-month period following the filing of the complaint, therefore, that should be the focus of the court's good cause inquiry regarding why timely service was not made. *Sammis,* 130 Idaho at 346, 941 P.2d at 318; *Telford,* 130 Idaho at 936, 950 P.2d at 1275. Factors deemed irrelevant to a good cause analysis are: the *pro se* status of plaintiff, that the action will be time barred if dismissal is granted, lack of prejudice to the defendant from untimely service; *Sammis, supra;* prior notice of the claim to the defen-

---

1. *Shaw* predates the adoption of the Idaho Rules of Civil Procedure. The defendant in *Shaw* who was served almost two years after the filing of the complaint argued laches in the absence of a statute or rule prescribing a time frame within which service must be completed.

dant and the timing of the defendant's motion to dismiss. *Telford, supra.* *See also, Nerco Minerals Co., et al v. Morrison Knudsen Corp. et al,* 132 Idaho 531, 976 P.2d 457 (1999).

The Martins assert the following circumstances as constituting good cause for service of process beyond the six-month period:

### 1. *Settlement negotiations.*

■ The Martins argue that during the ongoing settlement negotiations with defendant's insurer they maintained a good faith belief that the defendant had waived the service requirement. Counsel for the Martins deferred attempting to serve Hoblit until it appeared that the negotiations were either stalled or could not be finalized before the running of the six-month limitation period.

Distinct from *Sammis* and *Telford* where settlement negotiations occurred after the six-month period or not at all, this case puts squarely before the Court the issue of whether ongoing settlement negotiations should be considered in the "good cause" analysis required by Rule 4(a)(2). The Martins rely on *Assad v. Liberty Chevrolet, Inc.,* 124 F.R.D. 31 (D.R.I.1989), and *Gambino v. Village of Oakbrook,* 164 F.R.D. 271 (M.D.Fla.1995), where late service was excused upon a finding of good cause for non-compliance with the rule.[2] Good cause was shown in *Assad* because settlement with the co-defendant would have negated the need to serve the moving defendant. In *Gambino,* the Court found good cause to expand the 120–day time limit under the federal rule, reasoning that plaintiff tried to settle the case up to three days before the deadline at which time plaintiff sent the summons and complaint to the sheriff for service and that the defendant had actual notice of plaintiff's claim and was not prejudiced by plaintiff's failure to make timely service.

■ Other courts have rejected ongoing settlement negotiations to excuse compliance with the timely service requirement of Rule 4.[3] *See Mid–Continent Wood Products, Inc. v. Harris,* 936 F.2d 297 (7th Cir.1991); *Leonard v. Stuart–James Co., Inc.,* 742 F.Supp. 653 (N.D.Ga.1990); *Healthcare Compare Corp. v. Super Solutions Corp.,* 151 F.R.D. 114 (D.Minn.1993); *State ex rel. Charleston Area Medical Ctr. v. Kaufman,* 197 W.Va. 282, 475 S.E.2d 374, 380 (1996). As the court observed in *Healthcare,* if settlement negotiations alone were deemed good cause for failing to effectuate service, it would defeat the purpose of the rule and "plaintiffs would have no incentive to comply with the 120–day limit if they could always find shelter from the rule by claiming they had begun negotiations in good faith." *Healthcare,* 151 F.R.D. at 116. Another rationale for holding settlement negotiations not good cause for lack of service is that service "cannot properly be considered a hindrance to settlement." *Farnsworth v. Sea–Land Service, Inc.,* Civ.A. No. 87–5954, 1989 WL 20544 at *2 (E.D.La. 1989) (decision of no good cause also based on the party's failure to move for an extension of the 120–day period before its expiration).

As noted, the district court determined that there had been no agreement by Hoblit's insurer to waive the time limits found in Rule 4(a)(2). There was no evidence that Hoblit or his insurance company enticed the Martins to forego service or led their attorney to believe that Hoblit would not assert his rights under Rule 4 if service was not accomplished by the deadline. The Martins' argument that service was merely a formality under the circumstances was contradicted by letters from the Martins' counsel showing

---

**2.** There is other authority holding that settlement negotiations can in the proper circumstances satisfy the Rule 4 "good cause" requirement. *See Heiser v. Ass'n of Apartment Owners of Polo Beach Club,* 848 F.Supp. 1482, 1488 (D.Haw. 1993); *The Bank of Cape Verde v. Bronson,* 167 F.R.D. 370, 371–2 (S.D.N.Y.1996) ( good cause finding premised in large part upon plaintiff having filed an application for extension of the time for service before the expiration of the service period).

**3.** Effective December 1, 1993, Federal Rule 4(j) was edited slightly and renumbered as Rule 4(m). Because Idaho's Rule 4(a)(2) is identical in all material respects to the analogous federal rule, Rule 4(m), we will look to rulings on the scope of the federal rule for additional in interpreting the Idaho rule. *Compton v. Compton,* 101 Idaho 328, 334, 612 P.2d 1175, 1181 (1980).

an awareness of the deadline and the delivery of the summons and complaint to the sheriff for service eleven days before the expiration of the six-month time limit. Accordingly, we hold that settlement negotiations between the parties do not provide justification for delay of service and do not in and of themselves constitute good cause for non-compliance with Rule 4(a)(2).

## 2. *Diligent attempts to effect service.*

The Martins argue that they attempted service within the six-month time frame of Rule 4. Eleven days before the deadline, the Martins' counsel delivered the complaint and summons to the sheriff for personal service on Hoblit; however, service was not effectuated because Hoblit had removed himself from the state of Idaho. The Martins were forced to proceed with service by publication, once they learned through subsequent efforts to serve Hoblit in Washington state that his new address was a business mailbox where personal service of the summons and complaint could not be made. The order granting permission to publish service, however, was not sought until after the expiration of the six-month time limit, and no request was ever filed with the district court to obtain an extension available under the rules to complete service on Hoblit.

A court may consider a party's diligent attempts to effect service in determining whether the plaintiff has established good cause. *Sammis, supra.* If a plaintiff fails to make any attempt at service within the time period of the rule, it is likely that a court will find no showing of good cause. *See Gambino, supra* 164 F.R.D. at 274. Courts will look to "factors outside a plaintiff's control, such as sudden illness, natural catastrophe or evasion of service of process" to determine whether Plaintiff satisfied the "good cause" requirement. *Id. (citations omitted).*

Here, the district court found no real elements of affirmative evasion by Hoblit, although his unexpected relocation to Washington did impede service. The only explanation why counsel would have voluntarily withheld service so long or allowed the Rule 4(a)(2) time limit to expire without moving for an extension was the ongoing settlement negotiations. Having earlier rejected consideration of settlement negotiations, the only question remaining is whether counsel's single timely act of forwarding the summons and complaint to the sheriff for service can reasonably be viewed as diligent efforts to comply with the time restraints imposed by Rule 4(a)(2). Under the totality of the circumstances, good cause was not demonstrated by the Martins who bore the burden to show good cause for sufficient to avoid dismissal upon defendant's Rule 4(a)(2) motion to dismiss.

## CONCLUSION

Because the failure to timely serve Hoblit was not excused by a showing of facts rising to the level of good cause, the district court's order dismissing the Martins' claim pursuant to I.R.C.P. 4(a)(2) is affirmed. Costs are awarded to Hoblit. No attorney fees are allowed.

Chief Justice TROUT and Justice SCHROEDER concur.

Justice KIDWELL, dissenting.

I respectfully dissent. A determination of good cause should be based on the totality of the circumstances. Viewing the facts in the light most favorable to the Martins, good cause existed because the Martins (1) were engaged in active negotiations with Hoblit's insurance company, (2) had agreed with Hoblit's insurance adjuster that Hoblit would not be served "until such time as [the parties] were unable to reach an agreement on settlement of [the] claim," and (3) had attempted to serve Hoblit before the expiration of the six-month period, both personally and through the insurance company.

I.R.C.P. 4(a)(2) should not be utilized as a procedural trap. Rather, I believe that it should be interpreted in such a manner to encourage settlement. The good cause provision of the rule seems to contemplate flexibility in its application. Where, as here, the plaintiff was engaged in active negotiations, believed there was an agreement to settle out of court, could not locate the defendant, and

could not get a service address from the defendant's representatives, the totality of the circumstances provides good cause for the failure to serve the defendant within the six-month period.

Justice SILAK, concurs.