**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45185**

| | | |
|---|---|---|
| **MELANIE HANSEN,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Boise, April 2018 Term** |
| | ) | |
| **v.** | ) | **Filed: June 8, 2018** |
| | ) | |
| **GARY E. WHITE,** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **Defendant-Respondent.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge.

The district court's judgment is affirmed.

McBride, Roberts & Romrell, Idaho Falls, for appellant. Michael R. McBride argued.

Ryan B. Peck, Pocatello, for respondent.

_____

BRODY, Justice

This is a case about what constitutes "good cause" for failing to timely serve a defendant in accordance with the Idaho Rules of Civil Procedure. The case began with a May 2014 auto collision in Idaho Falls involving Melanie Hansen and Gary White. Hansen claimed White's negligence caused the collision, and she filed a complaint against him in May 2016. Process servers attempted to serve White in October 2016 at the address listed on the police report, which was taken from his driver's license. White had not lived at this address for years. Just days before the six-month deadline, Hansen attempted service by publication without obtaining a court order as required by statute. The process server also left the complaint and summons with White's daughter-in-law at the address listed on the police report. White filed a motion to dismiss for lack of service in November 2016. The district court initially found that good cause existed for Hansen's failure to timely serve White, but after holding a hearing on White's

1

subsequent motion for reconsideration, dismissed the claim without prejudice for failure to timely serve. Hansen appeals the dismissal. We affirm.

## I. BACKGROUND

On May 23, 2014, Melanie Hansen and Gary White were involved in a vehicle collision in Idaho Falls. An Idaho Falls Police officer responded to the scene, talked with both parties, and assessed that White's inattention caused the collision. White provided the officer his driver's license, on which White's address was listed as being in the city of Firth (the "Firth residence"). The officer listed the Firth residence as White's address on the collision report. Hansen filed a complaint seeking damages resulting from the collision on May 10, 2016, shortly before the two-year statute of limitations ran.

In October 2016, Hansen's attorney's legal assistant engaged Bulldog Legal Support ("BLS") to serve the complaint on White. The summons listed the Firth residence as White's address. BLS attempted service at this address on October 25, 2016. The BLS process server met Jeremy White at the Firth residence. Jeremy White informed the process server that he was Gary White's son, that Gary had not lived there for over ten years, and that he did not know Gary's current location but thought it may be in Mesquite, Nevada. BLS informed the legal assistant, who provided no further information as to Gary White's current address. BLS then provided an affidavit of non-service to the legal assistant. On October 31, 2016, the legal assistant asked BLS to return to the Firth residence and effect service. BLS returned on November 2, 2016, leaving the complaint with Natalie White, Jeremy's wife and Gary's daughter-in-law.

The assistant additionally searched various internet sites for 1.5 hours in late October, but she was unable to find Gary White's address. She also attempted service by publication after discovering White did not live at the Firth residence, submitting the summons on October 27, 2016 to the Post Register. Publication began on November 1 and continued four successive weeks through November 22. Hansen conceded, however, to not obtaining a court order in accordance with Idaho Code section 5-508 before attempting service by publication.

White filed a motion to dismiss Hansen's complaint on November 21, 2016, due to lack of personal jurisdiction for failure to serve him with process within the requisite six-month period, which ended on November 10. Hansen responded with a motion requesting an extension, claiming "good cause" existed for failing to effect service within the six-month period. The

district court denied White's motion to dismiss, granted Hansen's motion for an extension, and ordered service by publication in the Post Register.

White filed a motion for reconsideration, and stated that the motion would draw on supplemental case law as well as new evidence, including additional affidavits and testimony from the Idaho Falls officer who responded the day of the collision. Each party submitted briefs. On April 27, 2017, the district court held an evidentiary hearing on the motion, after which the court issued an oral ruling dismissing Hansen's case without prejudice. The court provided a written order consistent with its oral ruling on May 5, 2017. Since the statute of limitations expired one year earlier, in May 2016, the dismissal without prejudice effectively ended Hansen's claim. Hansen timely appealed.

## II. STANDARD OF REVIEW

The district court may reconsider and vacate a prior interlocutory order "so long as final judgment has not been entered." *Sammis v. Magnetek, Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997). "If a defendant is not served within 6 months after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." I.R.C.P. 4(b)(2). Whether good cause exists is a factual determination. *Sammis*, 130 Idaho at 346, 941 P.2d at 318; *Martin v. Hoblit*, 133 Idaho 372, 375, 987 P.2d 284, 287 (1999). The inquiry into good cause must focus on the six-month time period from the filing of the complaint, and the trial court must consider the totality of the circumstances to "determine whether the plaintiff had a legitimate reason for not serving the defendant" within that period. *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 132 Idaho 531, 534, 976 P.2d 457, 460 (1999) (citing *Telford v. Mart Produce, Inc.*, 130 Idaho 932, 936, 950 P.2d 1271, 1275 (1998)).

The good cause determination typically requires the summary judgment standard of review, in which the district court liberally construes the record in the light most favorable to the nonmoving party. *Sammis*, 130 Idaho at 346, 941 P.2d at 318. However, when the district court holds an evidentiary hearing that includes oral testimony, the court has "the opportunity to observe the witnesses' demeanors while testifying, to assess their credibility, and to detect prejudice or motive." *Elliot v. Verska*, 152 Idaho 280, 285, 271 P.3d 678, 683 (2012). This initiates a shift from the summary judgment standard of review to a standard that this Court "will draw all reasonable inferences in favor of the [trial] court's judgment." *Id.* (citing *Idaho Dep't of*

*Health & Welfare v. Doe*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010)). "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Id.* (citing *Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002)). Additionally, "[w]hen a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the district court." *Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003).

## III. ANALYSIS

**A. The trial court did not err in determining that Hansen did not serve White by delivering the complaint and summons to his daughter-in-law at the Firth residence.**

Hansen first claims she properly served White at his "declared" address—the Firth residence—within the requisite six months by leaving the summons and complaint with his daughter-in-law. She claims that the address listed on White's driver's license is sufficient to show that his "dwelling" or "usual place of abode" was the Firth residence. White contends that ample evidence in the record supports the fact that the Firth residence was never his dwelling at any relevant time during this action.

Idaho Rule of Civil Procedure 4(d)(1) provides that an individual may be served by:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone at least 18 years old who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Hansen does not claim to have served White personally, nor to have served an authorized agent. The only inquiry then is whether an address on a driver's license is sufficient to establish an "individual's dwelling or usual place of abode." It is not.

The Supreme Court of the United States has stated, "By the expression, 'the usual place of abode,' the law does not mean the last place of abode; for a party may change his place of abode every month in the year. Instead of that, it is . . . his then present residence." *Earle v. McVeigh*, 91 U.S. 503, 508 (1875). Other states have weighed in similarly on what constitutes a usual place of abode. The Utah Supreme Court, for example, cited *Earle* favorably and determined that "usual place of abode" is a more restricted term than a mere residence. *Grant v. Lawrence*, 108 P. 931, 933 (Utah 1910). The court then used a "totality of the circumstances" approach, weighing a defendant's presence in the community, the listing of an address as his

4

"home address" on successive tax returns during the relevant time, and failure to demonstrate he lived elsewhere as factors relevant to the inquiry. *Reed v. Reed*, 806 P.2d 1182, 1185 (Utah 1991). Washington also similarly defines "usual place of abode" as more than residence, "and means the place where the defendant is actually living at the time when service is made." *Dolan v. Baldridge*, 4 P.2d 871, 873 (Wash. 1931). "The purpose of the use of the term in the act relating to the service of process has primary reference to the place where the defendant is usually to be found." *Id.*

Idaho has not provided a detailed definition for "usual place of abode," and this case does not require us to do so. White provided ample evidence to show the Firth residence was not his usual place of abode. On one side of the scale, White provided affidavits from third parties—including Hansen's own process server—that White had not resided at the Firth residence for years before the collision. Additional affidavits demonstrated White maintained another Idaho address during the relevant time period. Also, because Hansen did not provide this Court with the hearing transcript, we must consider that the testimony at the hearing further supported the district court's determination that White's usual place of abode was not the Firth residence. *Gibson*, 138 Idaho at 790, 69 P.3d at 1051. The sole undisputed fact on the other side of the scale is that the Firth residence was listed on White's driver's license, and subsequently on the collision report. This is not enough to establish that the Firth residence was White's dwelling or usual place of abode. The district court did not err in finding that service on White's daughter-in-law at the Firth residence was insufficient to satisfy Idaho Rule of Civil Procedure 4(d)(1).

## B. The district court's determination that Hansen did not have good cause for failing to timely serve White was not clearly erroneous.

Hansen next claims that White's failure to update the address on his license constitutes "an evasion of process," and thus provided good cause for her failure to timely serve White. Hansen claims that she exercised due diligence sufficient to justify the extension of time based on factors outside of her control. White counters that the delay in beginning the process, the lack of reasonable effort thereafter, and Hansen's failure to take advantage of appropriate alternative remedies shows a marked lack of diligence.

The district court, considering the totality of the circumstances, must "look to factors outside of the plaintiff's control including sudden illness, natural catastrophe, or evasion of service of process." *Elliot*, 152 Idaho at 290, 271 P.3d at 688 (quoting *Harrison v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 145 Idaho 179, 183, 177 P.3d 393, 397 (2008)). In

5

weighing these factors, "the court must consider whether the plaintiff made diligent efforts to comply with the time restraints imposed by 4[(b)(2)]." *Id.* (citing *Martin*, 133 Idaho at 377, 987 P.2d at 289).

The first attempt at service took place on October 25, 2016, sixteen days before the expiration of the six-month deadline. By this time, Hansen had already foreclosed the remedial measure of service by publication because the last publication date would have extended beyond the deadline. *See* I.R.C.P. 4(e)(2) ("[S]ervice by publication is complete on the date of the last publication."). Thus, the fact that Hansen's claimed "innocent oversight" of failing to seek a court order prior to attempting publication service—required under Idaho Code section 5-508— made no difference. In fact, Hansen's next filing with the court occurred in December 2016 in response to White's motion to dismiss, after the six months had expired. The district court's good cause inquiry cannot extend this far. *See Sammis*, 130 Idaho at 346, 941 P.2d at 318 ("The relevant period of time on which to focus is the six months following the filing of the amended complaint . . . .").

Thus, for the relevant six-month period, the trial court was left with the following considerations: (a) a first attempt at service five and a half months into the six-month deadline; (b) service at an address pulled from a collision report two and a half years earlier; (c) a legal assistant's 1.5-hour internet search; and (d) an attempt at service by publication without following the statute and initiated too late to be completed within the six month service timeframe. Hansen maintains in briefing that the responding officer "also testified by way of affidavit that, 'I also asked Defendant and he said this [Firth address] was his address.'" However, the trial court held a hearing where both sides presented evidence—including the officer's live testimony—and after which the judge issued an oral ruling reversing his prior finding of good cause. Hansen has not included this transcript in her appeal, so "this Court will presume that the absent portion supports the findings of the district court." *Gibson*, 138 Idaho at 790, 69 P.3d at 1051. This Court must thus assume Hansen was unable to demonstrate at that hearing the type of evasive tactics she claims in her briefing. Moreover, even if we assume White had verbally stated to the officer that the Firth residence was his address, Hansen attempted service nearly two and half years later at that address. Hansen presented no evidence of a DMV search within the relevant six-month period, so she would have been in the same position had White moved during that period, regardless of White's address on the date of the accident. Given

these considerations, Hansen has not demonstrated the district court committed clear error in finding she did not show good cause for failure to timely serve White.

Additionally, Hansen's equitable estoppel claim must fail since she did not raise it in the proceedings below. "This Court will not consider issues raised for the first time on appeal." *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011) (citing *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 746, 152 P.3d 614, 617 (2007)).

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the district court's decision and grant costs to Respondent White.

Chief Justice BURDICK, Justices HORTON, BEVAN and Justice Pro Tem FORD CONCUR.