**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49174**

| | |
|---|---|
| DAUN BRERETON, | ) |
| | ) **Filed: September 19, 2022** |
| **Plaintiff-Appellant,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| BRANDON MARIAN, | ) |
| | ) |
| **Defendant-Respondent.** | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment dismissing complaint for personal injury, <u>vacated</u>; <u>case</u> <u>remanded</u>.

Armitage & Thompson, LLC; JJ Thompson, Spokane, Washington, for appellant. JJ Thompson argued.

Moore Elia & Kraft, LLP; Craig Stacey, Boise, for respondent. Craig Stacey argued.

LORELLO, Chief Judge

Daun Brereton appeals from the judgment dismissing his complaint for personal injury due to untimely service. We vacate the judgment and remand for further proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Brereton was involved in a motor vehicle collision with Brandon Marian on October 6, 2018. Both parties obtained counsel and began settlement negotiations. On August 3, 2020, Brereton filed a complaint alleging that he suffered injuries due to Marian's negligence. According to Brereton's counsel, Marian's counsel had previously refused to accept service on Marian's

behalf. Brereton retained a process server to serve the complaint on Marian at an address listed on a collision report.

The process server attempted to serve the complaint at the address on August 17, August 27, September 16, and September 23 of 2020, but there was no answer. On October 7, 2020, the process server attempted again. According to the process server, a young woman answered and asserted that, although Marian owned the home, he did not reside there. The young woman believed Marian lived with his parents but she "either did not know or would not tell" the process server the names or address of Marian's parents.

Using county assessor records, the process server confirmed that Marian owned the home at the address and also found a California mailing address for him. The process server sent a request to the United States Postal Service to confirm that the California mailing address was Marian's or to provide a forwarding address for Marian. Using social media, Brereton's counsel found information he believed pertained to Marian indicating that he was from California.

After approximately three weeks of not receiving an answer from the United States Postal Service, the process server began searching for addresses associated with the last name of "Marian," hoping to locate Marian's parents or other relatives. On December 17, 2020, the process server attempted service on one such address but received no answer. The process server also attempted service at another address on January 15, January 23, February 18, and February 21 of 2021, again with no success. The process server made an attempt at yet another address on February 26, 2021, but received no response. This address was the residence of Marian's parents and, because Marian was present during a second attempt, the process server completed service on March 13, 2021. This was 222 days after Brereton filed his complaint.

Marian moved to dismiss Brereton's complaint based on untimely service. In a supporting affidavit, Marian averred that, from before the collision until the time of signing the affidavit, he had resided at the address where the process server initially attempted service. Marian also averred that he had given his brother, a co-resident, permission to accept service on Marian's behalf. Brereton opposed the motion to dismiss, asserting there was good cause for the untimely service in part because he was misled by the information provided by the young woman who answered the door at the time of attempted service on October 7, 2020. Brereton also asserted that Marian should be estopped from asserting untimely service. In response, Marian filed a second affidavit

in which he averred that he spoke to his roommate's daughter and that she recalled "answering the door to a person who was attempting to find" Marian. According to Marian, the daughter related that she "vaguely remember[ed]" that a person had asked for Marian and that she informed the person that Marian "may be at [his] parents' house." The daughter further related that, when asked for the parents' address, she told the person "to just come back later." The daughter was seventeen years old during the entire period Brereton attempted to serve Marian.[1]

At the hearing on the motion to dismiss, Brereton orally moved to strike as hearsay the daughter's statements in Marian's second affidavit regarding what she said to the person at the door. After clarifying that Brereton had not filed a written motion to strike, the district court remarked that it was "going to allow this without a motion to strike that puts the parties on notice of [the] objection." Following the hearing, the district court granted Marian's motion to dismiss.

Brereton moved for reconsideration, again asserting there was good cause for the untimely service. He also renewed his motion to strike and requested that the district court address his argument that Marian should be estopped from asserting untimely service. The district court denied Brereton's motion for reconsideration and entered judgment dismissing the complaint. Brereton appeals.

## II.

## STANDARD OF REVIEW

When a trial court decides a motion to dismiss under I.R.C.P. 4(b)(2) without an evidentiary hearing, the standard of review is the same as that used to review an order granting summary judgment. *Crawford v. Guthmiller*, 164 Idaho 518, 522, 432 P.3d 67, 71 (2018). Thus, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to dismissal as a matter of law. *See Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Disputed facts are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010).

---

[1] We note that the district court implicitly inferred that the young woman and the process server are the same individuals as the daughter and the unidentified person at the door described in Marian's second affidavit. As noted below, the district court was entitled to draw this inference because it would have been the trier of fact if the motion had proceeded to an evidentiary hearing. *See Crawford v. Guthmiller*, 164 Idaho 518, 523, 432 P.3d 67, 72 (2018). Because neither party has challenged this inference, we defer to it on appeal.

Because a trial court would be the trier of fact if a motion to dismiss proceeded to an evidentiary hearing, the trial court is permitted to grant dismissal despite the possibility of conflicting inferences. *Crawford*, 164 Idaho at 523, 432 P.3d at 72. This Court freely reviews issues of law. *See Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

## III.

## ANALYSIS

Brereton asserts the district court should have granted his motion to strike and that the district court erred in granting Marian's motion to dismiss.[2] Marian responds that the district court did not rule on the motion to strike and that the district court did not err in granting the motion to dismiss. Although we hold that Brereton failed to obtain an adverse ruling on his motion to strike, precluding our consideration of that issue, we vacate the judgment and remand for further proceedings because there are genuine issues of material fact regarding whether Brereton had good cause for the failure to timely serve his complaint.

### A.     Motion to Strike

Brereton asserts that the district court erred by failing to strike hearsay statements from the daughter contained in Marian's second affidavit. Marian responds that the district court did not rule on the motion to strike and that, even if the district court erred, Brereton has failed to show that the error affected his substantial rights. Because we agree that Brereton failed to obtain an adverse ruling, we do not address Marian's alternative argument.

It is well-settled that, in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error. *Whitted v. Canyon Cnty. Bd. of Comm'rs*, 137 Idaho 118, 121, 44 P.3d 1173, 1176 (2002). In his appellate brief, Brereton represents that his "objection was denied by the district court because a motion to strike had not been filed." In support, Brereton cites to the following portion of the transcript of the hearing on the motion to dismiss:

---

[2]     We recognize that some of Brereton's arguments implicate the district court's decision on his motion to reconsider. The standard of review for a trial court's decision on a motion for reconsideration of an order on a motion to dismiss is the same as that articulated above for a decision on a motion to dismiss. *See Burns Concrete, Inc. v. Teton Cnty.*, 168 Idaho 442, 452, 483 P.3d 985, 995 (2020). Because the standards of review are the same, our analysis does not distinguish between the two motions.

> [Brereton's counsel]: As a preliminary matter, I wanted to object to the hearsay that is now going to be argued at this point, because the supplemental declaration that was filed on behalf of [Marian] at paragraph six does contain some hearsay of an unnamed, unknown individual about what was said to the process server.
>
> [District court]: Let me interrupt you. Has there been a motion to strike filed?
>
> [Brereton's counsel]: Not yet, Your Honor.
>
> [District court]: All right.
>
> [Brereton's counsel]: [Marian's second affidavit] was just filed the other day.
>
> [District court]: It was. I understand. I'm going to allow this without a motion to strike that puts the parties on notice of your objection. Go ahead then, [Marian's counsel].

This exchange does not show a denial of the motion to strike. Instead, the exchange shows the district court allowed the motion to strike to be oral rather than written. The remaining portions of the record show that the district court did not rule on the motion to strike despite Brereton's renewed motion to strike contained in his motion to reconsider. Because Brereton failed to pursue the motion to an adverse ruling, he failed to preserve this issue for appeal. Consequently, we will not consider the merits of his argument on this issue.

## B. Motion to Dismiss

Brereton asserts the district court erred in granting the motion to dismiss because he showed good cause for untimely service and because Marian should be estopped from asserting untimely service. Marian responds that Brereton failed to show good cause or that estoppel applies. We address each issue in turn.

### 1. Good cause

Brereton asserts there was good cause for untimely service based on the misleading information from the young woman and his continued efforts to serve the complaint. Marian asserts Brereton was not diligent in his service efforts and, thus, failed to show good cause.

If a plaintiff fails to serve a defendant within 182 days of the filing of a complaint, a trial court must dismiss the action against that defendant unless the plaintiff shows good cause for the failure to timely serve, in which case the trial court must extend the time for service for an appropriate period. I.R.C.P. 4(b)(2). The determination of whether good cause exists is a factual

5

one. *Sammis v. Magnetek, Inc.*, 130 Idaho 342, 346, 941 P.2d 314, 318 (1997).[3] There is no bright-line rule for ascertaining whether good cause exists. *Martin v. Hoblit*, 133 Idaho 372, 375, 987 P.2d 284, 287 (1999). The question of whether legal excuse has been shown is a matter for judicial determination based upon the facts and circumstances in each case. *Id.* Relevant inquiries include a plaintiff's diligence in attempting to timely serve and any factors contributing to the delay that were outside plaintiff's control. *Crawford*, 164 Idaho at 524, 432 P.3d at 73. In short, a plaintiff must have a legitimate excuse for failing to effect timely service. *Id.* The events relevant to a good cause analysis are limited to those occurring within 182 days of filing the complaint. *See Sammis*, 130 Idaho at 346, 941 P.2d at 318. The burden of showing good cause rests with the plaintiff. *Id.*

We begin by examining the factors outside of Brereton's control. The single most important factor was the young woman's representation to the process server that Marian did not live at the address where, in actuality, he resided. We recognize that Marian's account of the

---

[3] Years after deciding *Sammis*, the Idaho Supreme Court's observed it "has consistently held that trial courts' decisions involving application of a 'good cause' standard are discretionary decisions." *Mercy Med. Ctr. v. Ada Cnty., Bd. of Cnty. Comm'rs of Ada Cnty.*, 146 Idaho 226, 230, 192 P.3d 1050, 1054 (2008). Thus, the standard of review articulated in *Sammis*, which treated the question of good cause as a factual one and applied a summary judgment standard of review, appears to be an anomaly in Idaho law. In two contexts related to I.R.C.P. 4(b)(2), a trial court's decision involving good cause is reviewed for an abuse of discretion. In the first context, a trial court may dismiss a case "in which no action has been taken for a period of 90 days . . . unless there is a showing of good cause for retention." I.R.C.P. 41(e). In this context, "the determination of whether good cause is shown for retention is within the trial court's discretion." *Morgan v. Demos*, 156 Idaho 182, 186, 321 P.3d 732, 736 (2014). In the second context, a trial court "may set aside an entry of default for good cause." I.R.C.P. 55(c). Default occurs when a party "has failed to plead or otherwise defend." I.R.C.P. 55(a)(1). The trial court's decision on a motion to set aside a default is discretionary. *AgStar Fin. Servs., ACA v. Gordon Paving Co., Inc.*, 161 Idaho 817, 819, 391 P.3d 1287, 1289 (2017). In both of these contexts, a litigant risks losing a claim due to inaction unless the litigant shows good cause. This, in essence, is what I.R.C.P. 4(b)(2) provides. It is unclear why good cause determinations warrant discretionary review in these related contexts but not when reviewing a trial court's good cause determination in deciding a motion to dismiss under I.R.C.P. 4(b)(2). Discretionary review is the practice in several other states. *See, e.g.*, *Greco v. Pedersen*, 583 So. 2d 783, 785 (Fla. Dist. Ct. App. 1991); *Priede v. Jones*, 282 So. 3d 1266, 1270 (Miss. Ct. App. 2019); *Thacker v. Cowling*, 473 P.3d 518, 525 (Okla. Civ. App. 2020). Nevertheless, the parties have not challenged the standard of review. Consequently, we apply the standard of review articulated in *Sammis*.

6

young woman's representation (that she informed the process server that Marian resided there) conflicts with Brereton's account. This creates a genuine issue of material fact that must be construed in Brereton's favor. Viewed in that light, the young woman gave misleading information that caused Brereton to look elsewhere. This misleading information was outside of Marian's control. Viewing the evidence in the light most favorable to Brereton leads to the inference that, but for the young woman's misleading information, Brereton would have continued attempting to serve at the initial address (which Marian contends was the correct address all along) and, ultimately, would have served him in a timely manner.

Another factor outside of Brereton's control, when taking the inferences in his favor, was the lack of response from the United States Postal Service to the process server's request regarding the California mailing address. Although this factor did not play a large role, it contributed to the delay in service. A third factor was the COVID-19 pandemic, which was also outside of Brereton's control. The process server averred that, since the pandemic began, he has noticed "a decrease in people answering the door" for the process server "as compared to before the [COVID-19] pandemic." He also averred that, due to "the directives from State and Federal authorities to minimize in-person contacts," he did not knock on neighbors' doors when service attempts failed, which in the process server's experience could lead to helpful information. Taking the inferences in Brereton's favor, this factor also played a role in the delay, as it made it more difficult to obtain accurate information.

Next, we examine whether Brereton exercised due diligence. The process server first attempted service two weeks after the complaint was filed. When the first two attempts were unsuccessful, the process server contacted Brereton's counsel, who informed the process server that a response from the United States Postal Service indicated that there was "no change of address order on file" for the address associated with Marian. Upon receiving this information, the process server concluded that the address "was likely still being used by" Marian and attempted service three more times. It was on his last attempt that the process server received the misleading information from the young woman.

Consistent with the young woman's representation that Marian owned the home, Brereton's counsel found a county assessor record indicating that Marian owned the home where the process server had attempted service. The county assessor record listed as the "Owner

Address" a street address for Marian in California. Brereton's process server also searched the county assessor records and located the same information. Consistent with the county assessor record, Brereton's counsel found information on social media indicating that Marian was from California. The process server sent a request to the United States Postal Service to confirm whether this was still Marian's address.

After not receiving a response from the United States Postal Service for about three weeks, the process server began searching the county assessor records for people who shared Marian's last name. The process serve made three attempts at two different addresses "in hopes that one might be [Marian's] parents or relative with information on his address," but with no success. The process server averred that, "during this time frame,"[4] he periodically used internet sources to look for information on Marian, including by checking case names in California and Idaho courts. In sum, prior to the 182-day period expiring, Brereton attempted service eight times at three different addresses, searched internet records (including county assessor records) multiple times for Brereton and potential relatives, requested address confirmation twice from the United States Postal Service and searched a social media platform, none of which dispelled the misleading nature of the young woman's information. Taking the inferences in Brereton's favor, these efforts demonstrate some diligence that, when combined with the factors outside of Brereton's control that contributed to the delay, show there is a genuine issue of material fact regarding whether there was good cause for the failure to serve Marian within the 182-day period. Thus, the district court erred by granting the motion to dismiss based on the evidence in the record at that time.[5]

---

[4] Based on the context in which the phrase arises, "this time frame" also includes the post-deadline period when the process server continued his attempts to find Marian's parents or relatives. These post-deadline efforts do not factor into our decision because they are not relevant to whether Brereton has shown good cause for his failure to serve Marian within the 182-day period. *See Sammis*, 130 Idaho at 346, 941 P.2d at 318. These efforts, however, may factor into the district court's determination of what "appropriate period" to grant as an extension if, following an evidentiary hearing on remand, Brereton shows good cause for his failure to timely serve. *See* I.R.C.P. 4(b)(2).

[5] We note that, although the district court asked Brereton's counsel what authority he had that the summary judgment standard applied to a motion to dismiss under I.R.C.P. 4(b)(2) and Brereton provided supporting authority, the district court appears not to have applied that standard. For instance, the district court gave "limited weight" to the process server's second declaration

8

Marian asserts a number of arguments in support of his contention that Brereton failed to show good cause. Marian's primary argument is that there "is no evidence that [Brereton's counsel] ever informed [the process server] that service must be accomplished by February 1, 2021,"--the last day that service would have been timely. According to Marian, the "evidence demonstrates that the deadline was never a factor in the attempts at service." But Marian provides no satisfactory legal authority for why subjective knowledge of a pending deadline matters to a good cause analysis. In support, Marian cites precedent noting that a trial court "must consider whether the plaintiff made diligent efforts to comply with the time restraints imposed by" I.R.C.P. 4(b)(2). *See Elliott v. Verska*, 152 Idaho 280, 290, 271 P.3d 678, 688 (2012). This language from *Elliott*, however, requires a trial court to consider a plaintiff's diligence, not whether the plaintiff has subjective knowledge of the deadline or communicated this deadline to the process server. Actions to effect service do not become more or less diligent simply because a plaintiff or process server was or was not aware of the deadline. Consequently, the absence of evidence that Brereton or his process server knew of the deadline is irrelevant.

Regarding the young woman's statements, Marian asserts that "reliance on a minor's alleged statements" should not "be considered good cause." Marian's sole supporting authority for this argument is I.R.C.P. 4(d)(1)(B), which permits service by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone at least 18 years old who resides there." This rule governs who can receive service, not who is competent to give information and, consequently, does not support Marian's argument. Marian has failed to show that, as a matter of law, good cause cannot be based on the young woman's statements to the process server. In addition, the process server averred that the young woman "appeared to be in

---

because "a somewhat late explanation from that process server holds less weight with the court than an original declaration that would have made that explanation." This weighing of the evidence is not proper when there has not been an evidentiary hearing. *See Crawford*, 164 Idaho at 522, 432 P.3d at 71. The district court also did not mention the correct standard in its rulings on the motion to dismiss and the motion to reconsider. Although this failure to apply the correct legal standard does not factor into our decision, given that our review of the decision is de novo, the failure to apply the correct legal standard ostensibly contributed to the erroneous grant of the motion to dismiss.

her early 20's," an impression that must be construed in Brereton's favor. Given this impression, the process server would not have known that he was conversing with a minor.

Marian asserts the facts here are similar to those in *Crawford*, which were not sufficient to show good cause. In *Crawford*, the plaintiffs attempted service eleven times at a single address and, on the last attempt, were informed that the defendants "had not lived at [that] address for nearly two years." *Crawford*, 164 Idaho at 521, 432 P.3d at 70. The plaintiffs located the address using several internet sources, one of which disclaimed being "100% accurate." *Id.* at 523, 432 P.3d at 72. On the day that the deadline expired, the plaintiffs moved for an extension to allow service by publication. *Id.* at 521, 432 P.3d at 70. On appeal, the Idaho Supreme Court held that these facts "present[ed] a close call where reasonable minds could differ as to whether good cause was shown." *Id.* at 523, 432 P.3d at 72. The Idaho Supreme Court noted that the plaintiffs failed to give "due regard to *where* they were attempting service and *how* they selected that location" and held that there was not good cause because the plaintiffs did not show "any factors outside their control." *Id.* at 524, 432 P.3d at 73.

Marian notes that there were eleven service attempts in *Crawford*--three attempts beyond the eight Brereton made before the deadline expired. Marian also asserts that Brereton "did not give due regard to *where* [he] was attempting service or *how* [he] selected the location." Although the number of Brereton's service attempts were fewer than in *Crawford*, we decline to read *Crawford* as establishing a bright-line rule based on number of service attempts. *See Martin*, 133 Idaho at 375, 987 P.2d at 287 (disavowing bright-line tests for ascertaining good cause). In contrast to *Crawford*, the record here (when taken in the light most favorable to Brereton) shows a process server responding whenever new information came to light or service attempts at addresses garnered no response. The record also discloses how Brereton selected the locations to attempt service and where those locations were. Further, as discussed above, there are genuine issues of material fact about whether there were factors outside of Brereton's control--unlike the plaintiffs in *Crawford*.

Marian represents that, in *Crawford*, "the Court held, 'It was incumbent upon [plaintiffs], had they been exercising due diligence, to--at a minimum--seek assistance with this Court through a motion for additional time to serve or a motion for leave to serve through publication.'" Although Marian purports to quote from "the Court" (which indicates the Idaho Supreme Court), the quoted

language comes from the district court's decision in that case.[6] *See Crawford*, 164 Idaho at 522, 432 P.3d at 71. Notably, in *Crawford*, the Idaho Supreme Court did not rely on this part of the district court's rationale and did not hold that such motions are required before good cause can be found. *See id.* at 523-25, 432 P.3d at 72-74. Such a requirement would contravene the process outlined in I.R.C.P. 4(b)(2), which allows a trial court to grant an extension *after* a plaintiff shows good cause for failing to timely serve. While a failure to file such motions may factor into a good cause analysis, they are not a necessary condition.[7] *See, e.g.*, *Hincks v. Neilson*, 137 Idaho 610, 613, 51 P.3d 424, 427 (Ct. App. 2002) (agreeing with trial court that a plaintiff's failure to file "a motion to extend time or completing service of process by publication" contributed to the "totality of the circumstances" showing that plaintiff did not show good cause).

---

[6]     In another section of Marian's appellate brief, he represents that the "Idaho Supreme Court affirmed the district court's decision," which is correct, but then follows this up with these two sentences: (1) "The Court discussed that the Plaintiffs waited until the last possible moment prior to the running of the statute of limitations to file their action, and as such, assumed the risk of forfeiting their cause of action if they failed to effect service of process within six months"; and (2) "The Court further discussed that even though the plaintiffs were claiming the defendant was evading service, there was no evidence supporting the allegation other than the defendant not being home when attempts were made to serve." Marian's use of "the Court" ostensibly refers to the Idaho Supreme Court but the two sentences describe the district court's reasoning, not the Idaho Supreme Court's. *Cf. Crawford*, 164 Idaho at 521-22, 432 P.3d at 70-71 (noting in the factual and procedural background section that: (1) "The district court reasoned that the [plaintiffs] waited until the last possible moment prior to the running of the statute of limitations to file their action, and as such, assumed the risk of forfeiting their cause of action if they failed to effect service of process within six months"; and (2) "The district court found that although [a person attempting service] contended in his affidavit that the [defendants] were evading service, there was no evidence supporting this belief besides the fact that no one was home on the four times [the person attempting service] went to the address.").

[7]     On a related note, Brereton asserts that the district court erred by "imposing some level of requirement that a plaintiff is required to obtain an extension of the initial period before it expires, and failure to seek such an extension will, at minimum, be interpreted as a determinative factor weighing against finding good cause." This is not a correct interpretation of the district court's ruling. We recognize that the district court observed in its ruling on the motion to dismiss that the "determinative fact" in *Crawford* "seemed to be that [the plaintiffs] waited until the last day of timely service before seeking an extension from the court for service by publication." However, the district court clarified in its ruling on the motion to reconsider that a failure to file a motion to extend is "simply one of the factors that [a trial court] consider[s] under the totality of the circumstances." This is a correct statement of the law.

11

Marian notes that, in contrast to the plaintiffs in *Crawford* who filed a motion to extend on the last day of the deadline, Brereton did not "file a motion for an extension of time to serve or serve by publication." To serve by publication, a plaintiff must designate a newspaper that is "most likely to give notice to the person to be served" and provide the defendant's "last known post office address." I.C. § 5-509. Although Brereton had Marian's last known mailing address (the one where he claims he actually resided), the information Brereton received from the young woman, combined with the California mailing address and the indication from social media that Marian was from California, cast doubt on what newspaper would be most likely to give notice to Marian. Brereton's counsel averred that he was hopeful that the process server's "postal request [regarding the California address] would provide usable information on [Marian's] current whereabouts so as to proceed with personal service or otherwise provide sufficient information to proceed with alternative service." The process server never received a response from the United States Postal Service regarding the California address before the deadline for service expired, despite having received a response for a similar inquiry regarding Marian's correct address. Taking the inferences in Brereton's favor, the failure to seek an extension or for service by publication does not preclude a finding of good cause.

Marian also faults the process server for: (1) not asking the young woman questions regarding her name, her age, the number and names of other residents, or whether Marian picked up rent payments or if, instead, rent payments were mailed to him; (2) not informing the young woman of the "importance of the visit"; (3) not responding to the COVID-19 restrictions by taking "steps [he] may not have normally taken"; and (4) not locating Marian's parents before the deadline expired. Viewing the evidence in the light most favorable to Marian, however, there is no guarantee that the young woman would have provided accurate information if questioned or told of the purpose for the visit. As to the extra steps the process server could have taken, we note that the standard of diligence is "due diligence," not "extraordinary diligence" or "all possible diligence." *See, e.g.*, *Elliott*, 152 Idaho at 291, 271 P.3d at 689 (holding that "obviously, Defendants could easily have been served within the six-month period had Plaintiff exercised due diligence"); *Rudd v. Merritt*, 138 Idaho 526, 532, 66 P.3d 230, 236 (2003) (holding that "waiting five and three-fourths months before attempting to effect service does not show due diligence"). As Marian acknowledges, Black's Law Dictionary defines "due diligence"

12

as "the diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation." BLACK'S LAW DICTIONARY 553 (10th ed. 2014). Using Brereton's more colloquial phrasing, a good cause analysis should avoid the temptation to engage in "Monday Morning Quarterbacking" by critiquing the efforts at service using full hindsight. Reasonableness--not perfection--is the touchstone. *See, e.g.*, *Crawford*, 164 Idaho at 523, 432 P.3d at 72 (observing that eleven attempts at service at a single address "present[ed] a close call where reasonable minds could differ as to whether good cause was shown" although, ultimately, there was not good cause because the plaintiffs "failed to show factors outside of their control that prevented them from effectuating service"). The hypothetical actions the process server could have taken do not undermine the efforts actually taken, which (as discussed above) demonstrate diligence when the evidence is viewed in the light most favorable to Brereton.

Marian also finds fault with Brereton's counsel, contending that "due diligence dictates that [Brereton's] counsel should have at least broached the subject" of service "with [Marian's] counsel rather than *assuming* that it would not be helpful." On this point, there is another genuine issue of material fact--Brereton's counsel averred that he did not believe Marian or his counsel "would be cooperative in any aspects to achieving service of process" due to the "flat refusal to accept service of process" from Marian's counsel and "the back and forth (adversarial to say the least) with [Marian's] counsel leading up to filing the lawsuit." On the other hand, Marian's counsel averred that he informed Brereton's counsel of a lack of "authority to accept process." Marian's counsel also averred that he "reviewed all written communication between [his] firm and [Brereton's] counsel," that there are "twenty emails between counsel," but that "none include arguments or any type of verbal exchange that indicate animosity from either party." Construing the disputed facts and viewing the evidence in the light most favorable to Brereton, the "flat refusal" to accept service and the adversarial nature of the communications could support a demonstration that it was reasonable for his counsel to not contact Marian's counsel about service.

Next, we note that Marian makes a number of arguments not supported by the record. First, Marian claims that the process server "attempted service four times at [Marian's] proper address but during times when no adult would be expected to be home." Yet, Marian acknowledges that, for the first two service attempts, "no information is provided as to the time of day of either attempt

13

at service," making Marian's representation that the process server attempted to serve "during working hours" mere speculation. Given that inferences must be made in Brereton's favor, we will not infer that the process server's attempts were only during working hours. In any event, Marian averred in his second affidavit that he "was looking for full time employment and working odd jobs" during the time that the process server was attempting service, leaving open the possibility that Marian was home during normal working hours.[8]

Second, Marian claims the process server "waited two months to begin searching for [Marian's] parents." This is incorrect. Although there was approximately a two-month gap between the last service attempt at Marian's address and the first attempt to serve at a potential relative's house, the process server averred that, after not receiving a response from the United States Postal Service for about three weeks, he searched for addresses with the last name of "Marian." Because this search occurred during the two-month gap that Marian identifies, his representation on appeal that the process server did not begin his search for two months is inaccurate.

Third, Marian claims that the process server's "declaration demonstrates that no action was taken the two months after he spoke to [the young woman] other than a request to a California post office regarding change of address information." As discussed above, the process server searched for possible relatives during this time. In addition, the process server averred that "during this time frame"--which, when read in context, includes some of the two-month gap--he "continued to periodically search using internet resources in hopes of finding updated or new information, including checking State of Idaho and State of California courts for case names, in hopes of turning up information that might provide address information for [Marian]." Again, Marian's argument is premised on an inaccurate recital of the record.

---

[8]     We note that, in Marian's appellate briefing, he represents that he was "not at the residence during the daytime due to working odd jobs and looking for full time employment." In support, Marian cites the portion of his second affidavit in which he averred that his "brother and [another roommate] were gone during working hours most days of the week. Both had typical 9:00 [a.m.]-5:00 [p.m.] schedules and I was looking for full time employment and working odd jobs." Notably absent from Marian's second affidavit is his added representation on appeal that he too was not at home during normal working hours.

Although we hold that the district court erred in granting the motion to dismiss, we cannot "find good cause as a matter of law," as Brereton requests, because there are genuine issues of material fact. Those genuine issues of material fact can be resolved by the district court following an evidentiary hearing, which may be held following remand should Marian pursue his motion to dismiss. *See, e.g.*, *Elliott*, 152 Idaho at 285, 271 P.3d at 683. Although we vacate the judgment, we address the parties' arguments regarding estoppel because addressing this issue on appeal will expedite litigation of the motion to dismiss on remand if the motion proceeds to an evidentiary hearing.

### 2. Estoppel

Brereton argues that, because the young woman informed the process server that Marian did not reside at the address and he failed to update his mailing address on file in the county assessor's records, both equitable estoppel and quasi-estoppel bar Marian from asserting untimely service. Marian responds that neither form of estoppel applies. We hold that neither form of estoppel applies in this case.

Equitable estoppel requires, among other things, that there be a false representation or concealment of a material fact with actual or constructive knowledge of the truth. *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 22, 644 P.2d 341, 344 (1982). The rationale underlying equitable estoppel is that it would be inequitable to allow a person to induce reliance by taking a certain position and, thereafter, taking an inconsistent position when it becomes advantageous to do so. *Regjovich v. First W. Invs., Inc.*, 134 Idaho 154, 158, 997 P.2d 615, 619 (2000). Given this rationale, equitable estoppel cannot be premised on a false representation or a concealment of a material fact by a third party. *See id.; see also Knudsen v. Agee*, 128 Idaho 776, 779, 918 P.2d 1221, 1224 (1996) (noting that, in the context of a statute-of-limitations defense, "equitable estoppel is available to a plaintiff when the defendants, *by their representations or conduct*, kept the plaintiff from pursuing a cause of action during the limitation period") (emphasis added). As Marian notes, he never took the position that he did not reside at the address where the process server first attempted service. In addition, there is no evidence that Marian instructed the young woman to represent that Marian lived elsewhere. Consequently, even if we resolve the factual dispute regarding the nature of the young woman's statements in Brereton's favor, the young woman's representation to the process server does not form a basis for estoppel.

15

In support of his position that Marian's failure to update the mailing address listed on the county assessor's records forms a basis for equitable estoppel, Brereton cites to a New York opinion holding that a defendant was estopped from contesting service because the defendant failed to notify the state's department of motor vehicles of a change in address as required by law. *See Williams v. Yassky*, 199 A.D.2d 18, 19 (N.Y. App. Div. 1993). Brereton, however, cites no authority that Marian was required by law to update a mailing address listed on a county assessor's record. A party forfeits an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Thus, even if we adopted the rule in *Williams*, application of that rule would not warrant equitable estoppel in this case due to Brereton's failure to establish that Idaho law required Marian to update the county assessor records to list his current residence as his mailing address. In addition, there is no evidence in the record that Marian was making a false statement of fact at the time he gave the California mailing address to enter in the county assessor's records. Absent a false representation made by Marian, Brereton's equitable estoppel argument fails as a matter of law.

Brereton's assertion of quasi-estoppel suffers from similar defects. Quasi-estoppel prevents a party from taking a position when:

> (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006).[9] Again, there is no evidence that Marian took the position that he did not live at the address where the process server first attempted service or that the young woman acted on Marian's instructions. Regarding the California mailing address, Brereton asserts that Marian should not "benefit from his failure to update [the county assessor's] records to reflect his true mailing address." Because Brereton failed to provide

---

[9] As this Court noted in a prior opinion involving untimely service, Idaho Supreme Court precedent leaves "some ambiguity" as to what are "the specific elements of quasi-estoppel." *Naranjo v. Idaho Dep't of Corr.*, 151 Idaho 916, 920 n.2, 265 P.3d 529, 533 n.2 (Ct. App. 2011). We apply quasi-estoppel as articulated in *Atwood* because that is the version of quasi-estoppel most recently utilized by the Idaho Supreme Court. *See Sommer v. Misty Valley, LLC*, 170 Idaho 413, 429, 511 P.3d 833, 849 (2021).

authority that Idaho law required Marian to update the mailing address in the county assessor's records, he has forfeited consideration of that issue. In any event, there is no evidence that Marian took an inconsistent position regarding the California mailing address--for instance, nothing in the record indicates that Marian later asserted that he did not have a California mailing address at the time that the county assessor's record was created.

Finally, Brereton argues that "it is inconsistent for [Marian] to testify that he was prepared to accept service at [the address], even authorizing one of his roommates to accept service on [Marian's] behalf, and now seek dismissal." Although these actions may reveal inconsistent inclinations, they do not show an inconsistent position--an initial willingness to accept service during a period when service would be timely does not prevent a party from later asserting that a complaint should be dismissed because it was not timely served. *Cf. Rudd*, 138 Idaho at 532, 66 P.3d at 236 (noting in dicta that a refusal to sign an acknowledgement of service form after agreeing to accept service may factor into a good cause analysis if the acknowledgement form was received before the time to serve expired). Brereton has failed to show that quasi-estoppel applies.

Thus, even if we view the disputed facts in Brereton's favor, he has failed to show that either form of estoppel bars Marian from asserting untimely service. Consequently, the district court did not err in holding that Brereton failed to show that Marian should be estopped from doing so.

## IV.
## CONCLUSION

Brereton failed to obtain an adverse ruling on his motion to strike and, consequently, failed to preserve that issue for appeal. Because there is a genuine issue of material fact regarding whether Brereton can establish good cause, the district court erred by granting Marian's motion to dismiss. The district court, however, did not err in holding that Brereton failed to show that Marian should be estopped from asserting untimely service. Consequently, the judgment is vacated and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to Brereton.

Judge GRATTON and Judge HUSKEY, **CONCUR**.

17